IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN SOUTHERN INSURANCE CO., </br></br>Plaintiff,</br></br>vs.</br></br>SHERRILL CALHOUN, *et al.*</br></br>Defendants. | )</br>)</br>)</br>)</br>)  CASE NO.: 1:07cv409-wha</br>)</br>)</br>)</br>)</br>)</br>) |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Comes now the Plaintiff, American Southern Insurance Company (hereinafter "American Southern") and submits this Brief in support of its Motion for Summary Judgment:

**FACTS**

The material facts are as set out in the Plaintiff's Suggested Determinations of Undisputed Fact and Conclusions of Law, and are summarized herein. This case involves the claims of a surety for reimbursement/indemnity from a bond principal and indemnitors for losses sustained by the surety in performing on bonds it issued in connection with a highway construction contract in which the principal obligor (Triple C Construction) defaulted and the Surety was required to complete the project.

Triple C Construction entered into a contract with the Alabama Department of Transportation to construct two bridge culverts in Henry County, Alabama. (Complaint, para. 7; Defendants' Answer, para. 1; Exhibit "B" to Plaintiff's Request for Admissions to Sherrill Calhoun d/b/a Triple C Construction; Plaintiff's Requests for Admissions to Sherrill Calhoun, Request Number 7; Sherrill

Calhoun d/b/a Triple C Construction's answer to said Request for Production Number 7). Triple C was required to post payment and performance bonds for the subject construction project, each in the amount of $272,460.10 (Complaint, para. 8; Defendants' Answer, para. 1).

American Southern issued a payment bond and a performance bond, each in the amount of $272,460.10 , in connection with the subject construction project, which named Triple C as the *Principal*, American Southern as the *Surety*, and ALDOT as the *Obligee*. (Complaint, para 9; Answer, para. 1; Exhibit "C", Payment Bond; and Exhibit "D", Performance Bond, to Plaintiff's Requests for Admissions to Ruby Calhoun, and her responses to Requests Numbers 6 and 7).

In consideration for the issuance of said bonds by American Southern, Triple C Construction and also Sherrill Calhoun, individually, and Ruby Calhoun, individually, signed a General Agreement of Indemnity under which they, jointly and severally, agreed to indemnify and save harmless American Southern from and against any liability, loss, damages, or expenses of any kind arising out of or in any way connected with such Bonds. (Complaint, para. 10; Defendants' Answer, para. 1; Exhibit "A" to Plaintiff's Requests for Admissions to Defendants; Plaintiff's Request for Admissions to Sherrill Calhoun d/b/a Triple C Construction, Requests Numbers 1 through 5, and said Defendants' Answers to said Requests; Plaintiff's Requests for Admissions to Ruby Calhoun, numbers 1 through 3, and Ruby Calhoun's Answers to said Requests 1 through 3).

In March of 2005 ALDOT sent a letter to American Southern declaring that Triple C was in default and placing the contract in the Surety's hands for completion. (Complaint, para. 11; Defendants' Answer, para. 1; Affidavit of William Hattings, para. 2; Exhibit "A" to the Affidavit of William Hattings). Upon receipt of the default letter, American Southern conducted an investigation of the default and determine, in good faith, there was a reasonable basis for the ALDOT

claim on the performance bond and that American Southern should fulfill its performance bond obligations by taking over the project. (Affidavit of William Hattings, para. 3). On or about October 13, 2005, American Southern entered into a takeover agreement with ALDOT under which American Southern agreed to hire a completion contractor to complete the performance of the bonded contracts, and ALDOT agreed to pay American Southern the balance of contract funds remaining. Id. American Southern hired a completion contractor and completed the contract. (Affidavit of William Hattings, paras. 4 and 5). American Southern paid the completion contractor $295,985.05, and American Southern received $137,924.04 in remaining contract funds from ALDOT, leaving American Southern with a net loss of $158,065.01. (Affidavit of William Hattings, para. 5). American Southern also incurred expenses to Nicholson Professional Consulting for its services in connection with determining the work required to complete the project and overseeing and administering its completion, in the sum of $20,965.72. (Affidavit of William Hattings, para. 6). In addition, American Southern incurred $12,823.64 in attorney's fees and expenses in investigating the bond claim and in the takeover and completion process. (Affidavit of William Hattings, para. 7). American Southern also claims 12% interest as provided in the indemnity agreement.. (Affidavit of William Hattings, para. 8) and a 25% attorney's fee for prosecuting this indemnity enforcement action (ID. at para 9).

Ruby Calhoun, individually, Sherrill Calhoun, individually, and Sherrill Calhoun d/b/a Triple C Construction all admitted they executed the subject General Agreement of Indemnity. (Plaintiff's Requests for Admissions to Sherrill Calhoun, numbers 1 through 5; said Defendant's Answers 1 through 5; Plaintiff's Requests for Admissions to Ruby Calhoun, numbers 1 through 3; said Defendant's Answers to Requests 1 through 3).

## DISCUSSION

"Because the obligation with which guaranty and suretyship is concerned is in fact the debt or default of another, the law has developed mechanisms for ensuring that the burden of it will ultimately fall on the principal obligor." J. M. Marsh, C. W. Gamble, <u>Alabama Law of Damages</u>, § 24:2 (5th Ed.). "Primary among such mechanisms is the right of the security party to be reimbursed by the principal should he have to honor the latter's obligations." <u>Id</u>. "Such a right of reimbursement or indemnity is often supported by the principal's express promise to indemnify the Surety for all costs and expenses incurred on account of the requirement that he honor the principal's obligation." <u>Id</u>.

In this case, the Plaintiff's claim for reimbursement or indemnity is not limited by the common law or statutory rights granted to sureties that have performed the principal's obligation; rather, Plaintiff is entitled to full indemnity/reimbursement from the Defendants under the express terms of the General Agreement of Indemnity which the Principal and two individual indemnitor's executed in consideration for the Plaintiff's issuance of the subject bonds. The General Agreement of Indemnity not only contains a broad general indemnity clause (See 2. INDEMNITY), it also includes several clauses which enforce and strengthen the Surety's right to proceed and which, Plaintiff contends, even alter the ordinary burden of proof in such cases, such as the *prima facie* evidence clause. (Exhibit "A" to Plaintiff's Requests for Admissions to Defendants, para. 2. A). It has been recognized that this, " type of lawsuit, involving as it does numerous financial items, most of which are not in dispute and are susceptible to simple accounting treatment, is ideally suited for determination on summary judgment. . ." <u>Continental Casualty Co. v. American Surety Corp.</u>, 443 F.2d 649, 651 (D.C. Cir., 1970). <u>See</u> also <u>United States Fidelity & Guaranty Co. v. Feibus</u>, 15

F.Supp. 2d 579, 582 (N.D. Pa. 1998) ("Similarly, courts have granted summary judgment in favor of a surety based on such a provision.").

> I.   AMERICAN SOUTHERN IS ENTITLED TO CONTRACTUAL INDEMNITY FROM THE DEFENDANTS, ALL OF WHOM SIGNED THE GENERAL AGREEMENT OF INDEMNITY.

It is undisputed that each of the indemnitors signed the General Agreement of Indemnity. (See Suggested Determinations of Undisputed Fact, ¶ 4, 13, 14, 15). It is undisputed that the Plaintiff issued Performance and Payments Bonds, in the amount of $272,460.10 each, which Bonds named Triple C as the Principal, American Southern as the Surety, and ALDOT as the Obligee, in connection with Triple C's construction contract with ALDOT to build two bridge culverts in Henry County. (See Suggested Determinations of Undisputed Fact, ¶¶ 1-3). ALDOT declared Triple C in default, in March 16, 2005. (Suggested Determinations of Undisputed Fact, ¶ 5). American Southern investigated ALDOT's determination of default and concluded, in good faith, that there was a reasonable basis for the claim on the performance bond and it should fulfill its performance bond obligations by taking over the project, which it did. (Suggested Determinations of Undisputed Fact, ¶¶ 6-8). Under the undisputed facts of this case, Plaintiff is entitled to full indemnification and reimbursement from the Defendants for all of its losses sustained in connection with the Bonds, including attorney's fees, expenses, and interest.

It is settled law that a competent adult who signs a contract or agreement is bound by the provisions therein. Leeman v. Cook's Pest Control, Inc., 902 So.2d 641, 648 (Ala. 2004). Furthermore, under Alabama law, when there is no ambiguity in a contract of indemnity, particularly one issued in connection with a surety agreement, the determination of the meaning of the indemnity agreement is a question of law that should be decided by the court without resort to extrinsic

evidence. Whatley v. USF&G Co., 373 So.2d 1109, 1110 (Ala.Civ.App. 1979). See also Frontier Ins. Co. v. International, Inc., 124 F.Supp. 2d 1211 (N.D. 2000). Moreover, where each of the Defendants executed a valid indemnity agreement, the surety's right to reimbursement and indemnification is broader than the common law of suretyship which gave the surety certain rights against the bond principal. See Thomas v. Reliance Ins. Co., 617 F.2d 122 (5th Cir. 1980); Engbrock v. Federal Ins. Co., 370 F.2d 784 (5th Cir. 1967). Here, it is undisputed that all of the Defendants executed the subject General Agreement of Indemnity. Moreover, because each of the indemnitor's liability under the indemnity agreement is joint and several, the Surety is not required to exhaust its remedies or proceed against the bond principal before seeking reimbursement or indemnification from the individual indemnitors and, therefore, is entitled to indemnification from any or each of the defendants.

The General Agreement of Indemnity includes a *prima facie* evidence clause which a number of courts have upheld, enforced, and interpreted as shifting to the defendant the burden of proving that any payments made or expenses incurred by the surety were made fraudulently or in bad faith once the Plaintiff introduced evidence, such as the Affidavit of William Hattings in this case, of the amount of loss incurred and that it was incurred following the declaration of default and good faith response by the surety. Engbrock v. Federal Ins. Co., 370 F.2d 784, 786 (5th Cir. 1967) ("In face of these provisions, an indemnitor may successfully attack payments made by Surety only by pleading and proving fraud or lack of good faith by a surety."); Fallon Elec. Co. v. Cincinnati Ins. Co., 121 F.3d 125 (3rd Cir. 1997); RLI Ins. Co. v. Bennett Composites, Inc., No. Civ. A. 04-272, 2006 W.L. 263627 (E.D. Pa. 2006). See generally, Frontier Ins. Co. v. International, Inc., 124 F.Supp.2d 1211 (N.D. Ala. 2000). American Southern has introduced, via the Affidavit of William Hattings,

evidence that satisfies the *prima facie* evidence clause of the indemnity agreement, thereby shifting to Defendants the burden of alleging and proving that the amounts spent or expenses incurred were incurred in bad faith or fraudulently.

The undisputed evidence shows that American Southern investigated ALDOT's claims and decided in good faith to fulfill its obligations under the performance bond, and secured a replacement contractor who completed the project. American Southern also incurred administrative expenses in connection with administering and evaluating the claim and the completion of the project, for which it seeks reimbursement under the Agreement. Further, it incurred attorney's fees for which it seeks reimbursement or indemnity under the Agreement. The same as in Frontier Ins. Co., American Southern is entitled to summary judgment because there is no evidence that it performed under its bonds or made payments based on improper motive or purpose. Further, as the Court held in Frontier Ins. Co., an indemnitor's allegations of overpayment and/or negligent investigation of claims, "do not constitute bad faith for purposes of indemnity contracts." 124 F.Supp.2d at 1214-15. Moreover, under a general agreement of indemnity such as that in place here, the surety's actual liability to the obligor on the bond, "is not a prerequisite to a surety's right to reimbursement." Id. at 1215.

## II. AMERICAN SOUTHERN IS ALSO ENTITLED TO COMMON LAW AND STATUTORY INDEMNITY FROM THE DEFENDANTS.

Even in the absence of an express indemnity agreement, such as provided in the General Indemnity Agreement in this case, American Southern would be entitled to recover from the bond principal, Sherrill Calhoun, d/b/a Triple C Construction, for the loss it sustained on the bond plus interest, costs and attorney's fees.

"In addition to rights created under a valid indemnity agreements, Alabama has enacted legislation providing for the indemnification of a Surety for all liabilities occasioned by the default of its Principal." Frontier Insurance Company, supra, 124 F. Supp. 2d at 1213. See *e. g.,* Ala. Code Sections 8-3-2; 8-3-05 ("Payment by a Surety or endorser of a debt passed due entitles him to proceed immediately against his Principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of the Principal"); 8-3-11 ("A surety who has paid the debt of his Principal is subrogated to all the rights of the creditor, and, in a controversy with other creditors, ranks in dignity the same as the creditor whose claim is paid"). Under Alabama common law, when the Surety satisfies the Principal's obligation it is entitled to reimbursement or restitution from the Principal. SouthTrust Bank of Alabama, N.A. v. Webb-Stiles company, Inc., 931 So. 2d 706, 712 (Ala. 2005). The Surety that performs or pays is also entitled to broad subrogation rights: "The most cherished ancient right of the Surety is its right of equitable subrogation – the right to 'stand in the shoes' of any and all parties benefited directly by the surety's performance of its bonded obligation." 4 Bruner and O'Connor Construction Law 12:99 (electronic version, updated May 2007).

The evidence is undisputed that American Southern discharged and completed the Principal's obligations under the construction contract after the Obligee (ALDOT) declared the Principal to be in default. (Suggested Determinations of Undisputed Fact, ¶¶ 5-10). It is undisputed that American Southern suffered a loss, even after obtaining the remaining balance of contract funds, in the amount of $158,065.01 as a result of its payments to the replacement contractor hired to complete the project. (Suggested Determinations of Undisputed Fact, ¶ 8). In addition, American Southern suffered loss in the amount of $20,965.72 for its payment for services rendered by a consulting firm

for assistance in determining the scope of work required to complete the construction project and to oversee and administer that completion process. (Suggested Determinations of Undisputed Fact, ¶ 9). In addition, American Southern incurred $12,823.64 in reasonable attorney's fees in connection with the Bond claim and completion process.. (Suggested Determinations of Undisputed Fact, ¶ 10). Under these circumstances, Plaintiff is clearly entitled to recover for all loss sustained plus interest and an attorney's fee for this enforcement action.

## CONCLUSION

The undisputed facts establish that, under the law of Alabama, American Southern is entitled to summary judgment in its favor as to Counts One, Two and Three of its Complaint against the Defendants. It is undisputed that each of the Defendants signed the General Agreement of Indemnity, which was executed in connection with and consideration for the issuance of Performance and Payment Bonds by American Southern. It is further undisputed that American Southern was required to perform under the Performance Bond and undertook a reasonable investigation and performed in good faith. American Southern has the right to be indemnified by Sherrill Calhoun, Ruby Calhoun, and Sherrill Calhoun, d/b/a Triple C Construction, jointly and severally. Therefore, the Court should grant summary judgment in favor of American Southern and against the Defendants and award it $290,670.61. (See Suggested Conclusions of Law, paras 10-15). The purpose of indemnity agreements issued in connection with bonds is to allow a surety to settle bond claims in good faith and alleviate unnecessary and costly litigation, in furtherance of public policy, while retaining full rights to reimbursement from principals and indemnitors. Where, as here, the Surety acted in good faith, the indemnity provisions should be given effect and summary

judgment granted based on the undisputed evidence of the surety's performance and payments made in good faith.

Respectfully submitted,

WRIGHT, GREEN, P.C.
Attorneys for Plaintiff,
AMERICAN SOUTHERN INSURANCE COMPANY


/s/ *James P. Green*
JAMES P. GREEN      (GREEJ8808)
Post Office Box 16818
Mobile, Alabama 36616-0818
(251) 344-7744
jimgreen@wrightgreen.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 6th day of February, 2008, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. In addition, I have on this date, served a copy of the foregoing on all parties who are not registered with the CM/ECF system by placing a copy of the same in the United States mail, first-class postage prepaid and properly addressed, as follows:

N.J. Cervera, Esq.
Cervera, Ralph & Reeves, LLC
P. O. Box 325
Troy, AL 36081


/s/ *James P. Green*
JAMES P. GREEN

-10-