IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN SOUTHERN INSURANCE CO., ) ) ) Plaintiff, ) ) vs. ) ) SHERRILL CALHOUN, *et al.* ) ) Defendants. ) ) ) | CASE NO.: 1:07cv409-wha |

SUGGESTED DETERMINATIONS OF UNDISPUTED FACT
AND CONCLUSIONS OF LAW

Comes now the Plaintiff, American Southern Insurance Co. (hereinafter sometimes "American Southern"), and submits the following suggested determinations of undisputed fact and conclusions of law in support of its motion for summary judgment.

1.  On January 16, 2004, Triple C Construction (hereinafter sometimes "TCC") entered into a contract with the State of Alabama Department of Transportation (hereinafter sometimes "ALDOT"), to construct two bridge culverts for federal Aid Project numbers ACGBBRZ-3400 (205) & ACGBBRZ-3400(204) in Henry County, Alabama. (Complaint, para. 7). This allegation was not denied by the Defendants in their answer. (Defendants' Answer, para. 1). The construction contract documents were made Exhibit B to the Plaintiff's First Request for Admissions to Ruby Calhoun, which she admitted in her Response to Request number 5.

2.  The Defendant TCC was required to post Payment & Performance bonds for the project, each in the amount of $272,460.10. (Complaint, para. 8). This allegation was not denied by the Defendants in their answer. (Defendants' Answer, para. 1).

3.  On or about February 18, 2004, the Plaintiff ASIC issued Payment & Performance bonds in the amount of $272,460.10 each. (Attached to the Complaint as Exhibit "A"), which bonds named TCC as principal, ASIC as Surety, and the ALDOT as obligee. (Complaint, para. 9). This allegation was not denied by the Defendants' in their Answer. (Answer, para. 1). Defendant, Ruby Calhoun, also admitted that **Exhibit C**, to Plaintiff's Request for Admissions, is a true and correct copy of **the payment bond** issued by Plaintiff to TCC for the subject construction project. (See Plaintiff's Requests for Admissions to Ruby Calhoun, and her Response to Request No. 6). She also admitted that **Exhibit D** to Plaintiff's Request for Admissions is a true and correct copy of **the performance bond** issued by the Plaintiff to TCC on the subject project. (Ruby Calhoun's Response to Request for Admissions No. 7).

4.  In consideration for the issuance of said bonds, TCC and the individual indemnitors signed a <u>General Agreement of Indemnity</u> (hereinafter "GAI") (attached hereto as Exhibit "B" to the Complaint), stating in part:

> The indemnitors agree and bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, to indemnify and save harmless surety from and against any and all liability, loss, costs, damages or expenses of whatever nature or kind and arising out of or in any way connected with such Bonds, including but not limited to fees of attorneys and other expenses, cost and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of such bonds and attempting to recover losses or expenses from Indemnitors or third parties, whether the Surety shall have paid or incurred same, as aforesaid. The Indemnitors will indemnify the Surety against any and all liability,

> loss, damages, fees of attorneys, and other expenses which the Surety may sustain or incur by reason of or reliance upon representations made by the Indemnitors regarding defenses available to Principal and/or Surety to claims made against any such Bonds.

(Complaint, para. 10). This allegation was not denied by the Defendants in their answer. (Answer, para. 1). This same indemnity agreement was made Exhibit A to the Plaintiff's Requests for Admissions to the Defendants, and <u>the Defendants admitted</u> it was a true and correct copy of the Indemnity Agreement which they executed. (Plaintiff's Requests for Admissions to Sherrill Calhoun d/b/a Triple C Construction, requests numbered 1 through 5, and said Defendants' Answer to said requests 1 through 5; Plaintiff's Requests for Admissions to Ruby Calhoun, numbers 1 through 3, and Ruby Calhoun's answers to said Requests for Admissions 1 through 3).

5.   On March 16, 2005, **ALDOT sent a letter** to American Southern (the surety) **declaring that TCC was in default** for failing to submit plans for removal of unacceptable work, and placing the contract in the Surety's hands for completion. (Complaint, Para. 11). Defendants did not deny this allegation of the Complaint in their answer. (Defendants' Answer, Para. 1). The March 16, 2005 letter from ALDOT, declaring TCC in default, is also a part of the bond claims file of the Plaintiff and is Exhibit "A" to the Affidavit of Mr. Hattings. (Affidavit of William Hattings, page 2, para 2).

6.   Upon receipt of said March 16, 2005 letter, Allstar Financial, as Managing General Agent for American Southern, undertook an investigation into the default and determined, in good faith, that there was a reasonable basis for the ALDOT claim against the Performance Bond and that American Southern should fulfill its Performance bond obligations by taking over the project and seeing to its completion. (Hattings affidavit, page 20, para 3) Subsequently, on or about the 13th day

of October, 2005, American Southern entered into a takeover agreement with the State of Alabama Department of Transportation, under the terms of which American Southern agreed to hire a completion contractor to complete Performance of the bonded contracts and the State of Alabama Department of Transportation agreed to pay to American Southern the remaining balance of the contract funds. (Affidavit of William Hattings, para. 3).

7. American Southern retained Murphree Bridge Company as its completion contractor. (Affidavit of William Hattings, para. 4).

8. Murphree Bridge completed the contract and was paid $295,989.05 by American Southern for its efforts. American Southern received $137,924.04 in remaining contract funds from the State of Alabama Department of Transportation, resulting in a net loss to American Southern (the Surety) of $158,065.01. (Affidavit of William Hattings, page 2, para.5).

9. In addition, American Southern retained Nicholson Professional Consulting, Inc., to determine the scope of the work required to complete the project and to oversee and administer its completion. American Southern paid Nicholson Professional Consulting, Inc. the sum of $ 20,965.72 for its services. (Affidavit of William Hattings, page 3, para 6).

10. In addition, American Southern incurred reasonable attorney's fees and expenses in connection with the investigation of the ALDOT claim and the takeover and completion process in the amount of $12, 823.64. (Hattings affidavit, page 3, para7).

11. The total principal amount for which American Southern seeks indemnity is $191, 854.37: $158,065.01 + $20,965.72 + $12, 823.64. (Hattings affidavit, paras. 5,6,7).

12. The General Agreement of Indemnity provides for the recovery, by American Southern, of interest at the rate of 12% per annum on the principal amount. (GAI, para 2. B; Affidavit of William Hattings, para. 8). On May 9, 2006 demand was made on the defendants for full indemnity. (Affidavit of William Hattings, page 3, para 8, and Exhibit B to that affidavit). Interest on the principal amount due at 12% per annum, from May 9, 2006 to February 6, 2008, equals $40,682.12 . (Hattings affidavit, page 3, para 8).

13. Defendant, Sherrill Calhoun, admitted that **Exhibit A** to Plaintiff's Request for Admissions, is a true and correct copy of the March 1, 2004 General Agreement of Indemnity and admitted that it was executed by Sherrill Calhoun, as Sherrill Calhoun, d/b/a Triple C Construction, and also in his individual capacity, and further admitted that he was authorized to sign the indemnity agreement and bind Triple C Construction to the terms and conditions of the indemnity agreement by signing it as the owner. (Plaintiff's Request for Admissions to Sherrill Calhoun, Nos. 1-5; Defendants, Sherrill Calhoun's Answers to Request for Admissions, 1-5).

14. Defendant, Ruby Calhoun admitted that **Exhibit A** to Plaintiff's Request for Admissions is a true and correct copy of the March 1, 2004 General Agreement of Indemnity, that she signed it in her individual capacity, and that her signature thereon is her true and valid signature. (Plaintiff's Request For Admissions to Ruby Calhoun, Requests 1-3; Defendant, Ruby Calhoun's Answer; Defendants' Request for Admissions 1-3).

15. Sherrill Calhoun, is the owner of Sherrill Calhoun, d/b/a Triple C Construction, and an adult resident citizen of the State of Alabama. Ruby Calhoun, is the wife of Sherrill Calhoun, and is an adult resident citizen of the State of Alabama and she also entered into the subject Indemnity Agreement dated March 1, 2004 and attached as Exhibit A to Plaintiff's Request for

Admissions. (See Plaintiff's Request for Admissions to Ruby Calhoun, Requests 1-3; Ruby Calhoun's Answers to Request for Admissions, 1-3).

16. In Count One of the Complaint, American Southern sued Defendant, Sherrill Calhoun, d/b/a TCC and stated a claim for common law indemnity seeking to recover the loss it sustained under its bond from the bond principal, Sherrill Calhoun, d/b/a TCC, plus interest, costs, and attorney's fees.

17. In Count Two, American Southern stated a claim for statutory indemnity/reimbursement under the Alabama Code, including Sections 8-3-2 and 8-3-5, against Sherrill Calhoun, d/b/a TCC, for the loss sustained on the bond, plus interest, costs, and attorney's fees, and also alleging it was entitled to all the rights of the creditor it substituted for (ALDOT) and was subrogated to all of the creditor's rights and remedies against said Defendant.

18. In Count Three, American Southern stated a claim for contractual indemnity against Defendants, Sherrill Calhoun and Ruby Calhoun, individually, and against Sherrill Calhoun, d/b/a TCC, alleging that the Defendants entered into an indemnity agreement with the Plaintiff and that Plaintiff sustained losses and incurred expenses and attorney's fees to which it is entitled to reimbursement from all three Defendants under said indemnity agreement.

19. The General Agreement of Indemnity entered into by the Defendants also includes clauses expanding the Plaintiff's contractual right to recovery from the Defendants for its losses and expenses incurred in handling a claim under the bonds, including the following provision giving the Plaintiff discretion to determine whether to pay compromise, defend or settle any claims or suits on the bonds, and the right to incur expenses in handling such claims as it shall deem necessary, specifically including, but not limited to, expenses for investigating, accounting, engineering and

legal services, and further providing that in any claim or suit (such as the subject claim on the indemnity agreement) an itemized statement of the losses or expenses, sworn to by an officer or agent of the Plaintiff, or the vouchers or other evidence of disbursements by the Plaintiff shall be ***prima facia* evidence** of the fact and extent of the liability of the indemnitors therefor:

> A. Surety shall have the right in its sole discretion to determine whether any suits or claims shall be paid, compromised, defended, prosecuted or appealed and to pay out such sums as it deems necessary to accomplish any of those purposes and its determination as to whether such suit or claim should be settled or defended shall be binding and conclusive on an Indemnitors. Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expense for investigative, accounting, engineering or legal services. Surety shall have the foregoing rights, irrespective of the fact that Indemnitors may have assumed, or offered to assume, the defense of Surety upon such claim. In any claim or suit hereunder, an itemized statement of aforesaid loss and expense, sworn to by an officer or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facia evidence of the fact and extent of liability hereunder of Indemnitors.

(See Plaintiff's Request for Admissions to Defendants, Requests 1 through 5, and Defendant's Answers and Exhibit A thereto, Paragraph 2.A.)

20. By another clause of the General Agreement of Indemnity, the Defendants contractually grant to the Plaintiff the right to **reimbursement of all expenses and attorney's fees** and, further, expressly agree that if the Surety was caused to enforce the indemnity agreement by filing suit, such as in this case, the Surety may recover all its expenses of such litigation, including **25% of the sums due the Surety as attorney's fees**, as follows:

> B. Surety shall have the right to reimbursement of its expenses, premiums and attorney's fees hereunder, irrespective of whether any bond loss payment has been made by Surety. If the Surety has cause to enforce the terms of this Indemnity Agreement by filing suit against Indemnitors to recover sums due under this agreement, it is understood by the Principal and Indemnitors that the Surety may recover its further expenses of such litigation, accrued interest and including 25% of

such sums as attorney's fees. Any debt accrued by the Surety, on behalf of Principal and Indemnitors will accrue interest at 12% per annum.

(Exhibit A to Plaintiff's Request for Admissions to Defendants, Requests 1-4, Paragraph 2.B.).

21. Under the General Agreement of Indemnity it is further agreed that the Surety shall have **the right** to defend any claim or suit in the name of the Principal and **to adjust, settle or compromise any such claim,** demand or suit, as follows:

> C. Surety shall have the right, and is hereby authorized, but not required, to defend in the name of Principal, or in the name of Principal to adjust, settle or compromise any claim demand, suit or judgment upon any of said Bonds unless Indemnitors shall, in writing, request Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, or otherwise to resist any such, and shall, as a condition precedent, first deposit with Surety satisfactory collateral sufficient to pay on a current basis all expenses of such litigation, defense or appeal, including attorneys' fees, and to pay any judgment or judgments rendered or that may be rendered, plus interest, costs, expenses and attorneys' fees thereon. In any event, the provisions of the following paragraph will apply.

(Exhibit A to Plaintiff's Requests for Admissions to Defendants, Paragraph 2. C.).

22. The General Agreement of Indemnity executed by the Defendants further provided to the Plaintiff the right, upon becoming insecure or otherwise in its discretion, to require the Indemnitors to deposit with the Plaintiff such reserve as may be necessary to pay the cost to defend, settle or compromise or adjust any claims including attorney's fees and other expenses and such payments to be held by Surety as collateral or used by Surety in payment settlement or compromising of claims for the amount of such payments to be retained by Surety as a reimbursement. (See Paragraph 2.D. of the General Agreement of Indemnity, Exhibit A to Requests for Admissions to Defendant).

23. Finally, the Defendants agreed that **all funds due or to become due under the contract, covered by the bonds are "trust funds"** and, if the Surety discharges the Principal's

obligation (as occurred here), the Surety shall be entitled to assert the claim of such person (the bond Principal) to the trust funds. (See Paragraph 2.F. of General Agreement of Indemnity, Exhibit A to Plaintiff's Requests for Admissions).

## CONCLUSIONS OF LAW

1. This Court has original jurisdiction under 28 USC, Section 1332 (a)(1) in that there is a complete diversity of citizenship between the Plaintiff and all Defendants in that the amount in controversy exceeds the amount of $75,000.00 exclusive of interest and costs.

2. "A suretyship is a three-party relationship where the *surety* undertakes to perform to an *obligee*, if the *principal* fails to do so." United States Fidelity & Guaranty Co v. Feibus, 15 F.Supp.2d 579, 580 (M.D. Pa. 1998). "Although the surety's right of indemnity from the contractor [principal] is implied, construction bond sureties, as a routine practice, traditionally condition their issuance of bonds upon the execution by the contractor and other designated indemnitors of written agreements of indemnity." 4 Bruner & O'Connor Construction Law §12:98 (electronic version, updated May 2007).

3. An agreement to indemnify is a contract and will be construed in accordance with its terms. Industrial Tile, Inc. v. Stewart, 388 So. 2d 171, 176 (Ala. 1980). See also, generally, Royal Insurance Company of American v. Whitaker, 824 So. 2d 747, 750-51 (Ala. 2002); Stone Building Company v. Star Electrical Contractors, Inc., 796 So. 2d 1076 (Ala. 2000). "Unlike indemnity agreements in construction contracts, contracts of indemnity in suretyship are favored in the law." 3 Bruner & O'Conner Construction Law § 10:103, n. 14 (electronic version, updated May 2007).

4. Where there is no ambiguity in a contract of indemnity executed in connection with the issuance of a bond by a surety, the determination of its meaning is a question of law and should

be decided by the Court without resort to extrinsic evidence. <u>Whatley v. United State Fidelity and Guaranty Company</u>, 373 So. 2d 1109, 1110 (Ala. Civ. App. 1979) (summary judgment for surety affirmed). Moreover, general agreements of indemnity executed in connection with the issuance of bonds, such as those in the instant matter which include a *prima facie* evidence clause, have been recognized and enforced by the courts. <u>Engbrock v. Federal Insur. Co.</u>, 370 F2d 784 (5th Cir. 1967); <u>Frontier Insurance Company v. International, Inc.</u>, 124 F. Sup. 2d 1211, 1213 (M.D. Ala., 2000) ("[M]ost court addressing the issue have sustained and upheld indemnity agreements similar to the one at issue in this case."); <u>United States Fidelity & Guaranty Co. v. Feibus</u>, 15 F.Supp.2d 579, 582-83 (M.D. Pa, 1998). " The written indemnity agreement typically confers upon the surety benefits beyond those implied by law." 4 <u>Bruner & O'Connor Construction Law</u> §12:98 (electronic version, update May 2007).

     5.    "In addition to rights created under a valid indemnity agreements, Alabama has enacted legislation providing for the indemnification of a Surety for all liabilities occasioned by the default of its Principal." <u>Frontier Insurance Company</u>, supra, 124 F. Supp. 2d at 1213. See *e. g.*, <u>Ala. Code</u> Sections 8-3-2; 8-3-05 ("Payment by a Surety or endorser of a debt passed due entitles him to proceed immediately against his Principal for the sum paid , with interest thereon, and all legal costs to which he may have been subjected by the default of the Principal"); 8-3-11 ("A surety who has paid the debt of his Principal is subrogated to all the rights of the creditor, and, in a controversy with other creditors, ranks in dignity the same as the creditor whose claim is paid"). Under Alabama common law, when the Surety satisfies the Principal's obligation it is entitled to reimbursement or restitution from the Principal. <u>SouthTrust Bank of Alabama, N.A. v. Webb-Stiles company, Inc.</u>, 931 So. 2d 706, 712 (Ala. 2005). The surety that performs or pays is also entitled to

broad subrogation rights: "The most cherished ancient right of the surety is its right of equitable subrogation – the right to 'stand in the shoes' of any and all parties benefited directly by the surety's performance of its bonded obligation." 4 <u>Bruner and O'Connor Construction Law</u> 12:99 (electronic version, updated May 2007). The Court finds that the Plaintiff is entitled to recover from the bond principal the sums paid to complete the contract and paid to its consultant in connection therewith and its attorney's fees and expenses in connection therewith, and, therefore, Plaintiff is entitled to summary judgment in its favor as to Counts One and Two of the Complaint.

6. As to Count Three, the Court finds that all of the Defendants agreed to indemnify and reimburse the Plaintiff, "from and against any and all liability, loss, costs, damages or expenses of whatever nature or kind and arising out of or in any way connected with such Bonds, including but not limited to fees of attorneys and other expenses, costs and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of such bonds and attempting to recover losses or expenses from indemnitors or third-parties," and that the claims made by the Plaintiff in this case are within the scope of the broad indemnity agreed to by the Defendants.

7. The Court further finds that the Defendants, by express contract of indemnity, granted to the Plaintiff "the right in its sole discretion to determine whether any suits or claims shall be paid, compromised, defended, prosecuted" and to "pay out such sums as it deems necessary to accomplish any of those purposes and its determination as to whether such suit or claims shall be settled or defended shall be binding and inclusive on Indemnitors." It was agreed that Plaintiff would have the right to incur such expenses in handling a claim, as it deems necessary, including but not limited to expenses for investigation, accounting, engineering and legal services; and the Court further finds that the Defendants agreed that in a claim or suit, such as the instant litigation, a statement of loss

or expense, such as that submitted by the Plaintiff through the Affidavit Mr. Hattings, "shall be prima facia evidence" of the fact and extent of the liability of the Indemnitors to the Plaintiff. Such clauses in general indemnity agreements have been construed by courts as not against public policy and been upheld, and, further, have been interpreted by some courts as shifting the burden to the Defendant to allege and prove that the surety's claimed payments, attorney's fees, costs and expenses were excessive or in bad faith. See generally, Fallon Electric Co, Inc v. Cincinnati Insurance Co., 121 F.3d 125, 128-130 (3rd Cir. 1997); Engbrock v. Federal Insurance Company, 370 F.2d 784 (5th Cir. 1967); Continental Casualty Company v. American Surety Corp., 443 F.2d 649 (D.C. Cir. 1970); Transamerican Insurance Company v. Bloomfield, 401 F. 2d 357, 362 (6th Cir.1968).

8. Furthermore, as to what constitutes "bad faith" in this context, bad faith by a surety is not simply bad judgment or negligence, but implies the conscious wrongdoing, because of a dishonest purpose or immoral obliquity, and bad faith in this context is more than a lack of diligence or even gross negligence. Engbrock v. Federal Insurance Co., 370 F2d 784 (5th Cir, 1967); RLI Insurance Company v. Bennett Composites, Inc., 2005 WL 2902496 *7 (E.D. Pa., 2005); Frontier Insur. Co v. International, Inc., 124 F.Supp2d 1211 (N.D. Ala. 2000).

9. Plaintiff has presented evidence that it investigated ALDOT's claim and settled said claim in good faith and that the expenses incurred were incurred by Plaintiff in good faith. (See Affidavit of William Hattings, paras 2-7).

10. The court further finds that the March 16, 2005 default letter from ALDOT and the subsequent investigation by Plaintiff were sufficient to trigger the Surety's obligations under the performance bond, and, further, that the Plaintiff has produced evidence that its performance and payments were made in good faith. Id.

10. The Court concludes that the Plaintiff, by performing and fulfilling the Principal's obligations under the construction contract, was entitled to recover and retain the contract balance under the contract with ALDOT and is also entitled to reimbursement and indemnity from Defendants for the remaining loss incurred, which in this case is $ 158,065.01.

11. The Court further finds that the Plaintiff is entitled to recover fees and expenses incurred in investigating, administering, defending and settling ALDOT's bond claim. Plaintiff has presented prima facia evidence that it incurred expenses to Nicholson Professional Consulting, for services needed to determine the work required to complete performance and to oversee and administer completion of the contract, and is entitled to reimbursement and indemnity from the Defendants in the sum of $20,965.72 for those efforts.

12. The Court also finds that the Plaintiff is entitled to recover from the defendants attorney's fees incurred in connection with the bond claim and the takeover and completion process in the amount of $12, 823.64. This brings the total principal amount for which Plaintiff seeks indemnity to $191,854.37.

13. Pursuant to the General Agreement of Indemnity, the principal amount is to bear interest at the rate of 12% per annum. Plaintiff is entitled to recover said interest from the defendants from May 9, 2006, which through February 6, 2007 equals $40, 682.12.

14. With regard to attorney's fees and expenses incurred in prosecuting this indemnity action against the Defendants, the indemnity agreement provides the plaintiff is entitled to an attorney's fee in the amount of 25% of the total indemnity and accrued interest sought ($232,536.49), which would be $58,134.12 in this case. The Court finds this reasonable.

15. The plaintiff is entitled to judgment against the plaintiffs in the amount of $290,670.61.

Respectfully submitted,

WRIGHT, GREEN, P.C.
Attorneys for Plaintiff,
AMERICAN SOUTHERN INSURANCE COMPANY


/s/ James P. Green
JAMES P. GREEN      (GREEJ8808)
Post Office Box 16818
Mobile, Alabama 36616-0818
(251) 344-7744
jimgreen@wrightgreen.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 6th day of February, 2008, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. In addition, I have on this date, served a copy of the foregoing on all parties who are not registered with the CM/ECF system by placing a copy of the same in the United States mail, first-class postage prepaid and properly addressed, as follows:

N.J. Cervera, Esq.
Cervera, Ralph & Reeves, LLC
P. O. Box 325
Troy, AL 36081


/s/ James P. Green
JAMES P. GREEN