IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN SOUTHERN INSURANCE CO., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CASE NO.: 1:07cv409-wha |
| SHERRILL CALHOUN, *et al.* | ) ) ) | |
| Defendants. | ) ) ) | |

SUPPLEMENTAL NOTICE OF FILING MATERIALS IN SUPPORT
OF SUMMARY JUDGMENT MOTION

Comes now the Plaintiff, American Southern Insurance Company, and gives notice of supplementing Exhibit 5 listed in its Notice of Filing Materials in Support of Summary Judgment Motion which is numbered Document 20-6:

5.    Plaintiff's First Requests for Admissions to Ruby Calhoun and Exhibits thereto. The Exhibits to this document were inadvertently not scanned as part of the document filed on February 6, 2008.

Respectfully submitted,

WRIGHT, GREEN, P.C.
Attorneys for Plaintiff,
AMERICAN SOUTHERN INSURANCE COMPANY


 */s/ James P. Green*
JAMES P. GREEN    (GREEJ8808)
Post Office Box 16818
Mobile, Alabama 36616-0818
(251) 344-7744
jimgreen@wrightgreen.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 7th day of February, 2008, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.  In addition, I have on this date, served a copy of the foregoing on all parties who are not registered with the CM/ECF system by placing a copy of the same in the United States mail, first-class postage prepaid and properly addressed, as follows:

N.J. Cervera, Esq.
Cervera, Ralph & Reeves, LLC
P. O. Box 325
Troy, AL 36081


     /s/ James P. Green
JAMES P. GREEN

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

AMERICAN SOUTHERN                )
INSURANCE CO.,                   )
                                 )
        Plaintiff,               )
                                 )     CASE NO.: 1:07cv409-wha
                                 )
                                 )
SHERRILL CALHOUN,                )
RUBY CALHOUN,                    )
SHERRILL CALHOUN d/b/a           )
TRIPLE C CONSTRUCTION            )
                                 )
        Defendants.              )
                                 )

## PLAINTIFF, AMERICAN SOUTHERN INSURANCE COMPANY'S FIRST REQUESTS FOR ADMISSIONS TO RUBY CALHOUN

The Plaintiff, American Southern Insurance Company, hereby propounds the following requests for admissions to the Defendant, Ruby Calhoun, to be either admitted or denied within thirty (30) days as required by the *Federal Rules of Civil Procedure*:

1.      Admit that the agreement of indemnity dated March 1, 2004, attached hereto as Exhibit A, is a true and correct copy of the original.

**RESPONSE:**

2.      Admit that Ruby Calhoun signed Exhibit A in her individual capacity.

**RESPONSE:**

3.      Admit that the signature on page two of the Indemnity Agreement, Exhibit A, is the true, lawful and valid signature of Ruby Calhoun.



EXHIBIT
5

**RESPONSE:**

4.    Admit that Triple C Construction entered into a contract with the State of Alabama Department of Transportation (hereinafter "ALDOT"), to construct two bridge culverts for the Federal Aid Project Numbers ACGBBRZ-3400(205) and ACGBBRZ-3400(204) in Henry County, Alabama.

**RESPONSE:**

5.    Admit that the 20 page document attached as Exhibit B is a true copy of the agreement between Triple C Construction and ALDOT for construction of two bridge culverts for the Federal Aid Project Numbers ACGBBRZ-3400(205) and ACGBBRZ-3400(204).

**RESPONSE:**

6.    Admit that Exhibit C attached hereto is a true and correct copy of the payment bond issued by American Southern Insurance Company to Triple C Construction on the project known as Federal Aid Project Numbers ACGBBRZ-3400(205) and ACGBBRZ-3400(204).

**RESPONSE:**

7.    Admit that Exhibit D attached hereto is a true and correct copy of the performance bond issued by American Southern Insurance Company to Triple C Construction on the project known as Federal Aid Project Numbers ACGBBRZ-3400(205) and ACGBBRZ-3400(204).

2

**RESPONSE:**

8.　Admit that Exhibit E attached hereto is a true and correct copy of a March 16, 2005 letter from ALDOT to Triple C Construction and American Southern Insurance Company.

**RESPONSE:**

WRIGHT, GREEN, P.C.
Attorneys for Plaintiff,
AMERICAN SOUTHERN INSURANCE COMPANY

BY: _____
JAMES P. GREEN　　(GREEJ8808)
Post Office Box 16818
Mobile, Alabama 36616-0818
(251) 344-7744
jimgreen@wrightgreen.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this _20th_ day of June, 2007, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. In addition, I have on this date, served a copy of the foregoing on all parties who are not registered with the CM/ECF system by placing a copy of the same in the United States mail, first-class postage prepaid and properly addressed, as follows:

N.J. Cervera, Esq.
Cervera, Ralph & Reeves, LLC
P. O. Box 325
Troy, AL 36081

_____
JAMES P. GREEN

3

**ERICAN SOUTHERN INSURANCE COMPAN**
Atlanta, Georgia

## GENERAL AGREEMENT OF INDEMNITY

KNOW ALL MEN BY THESE PRESENTS, that whereas the undersigned (hereinafter referred to as "Indemnitors") have requested and do hereby request the American Southern Insurance Company (hereinafter referred to as "Surety") to execute, procure the execution of such bonds, undertakings or recognizances (all of which are hereafter included within the term "Bond or Bonds") as have been and such as may hereafter be applied for directly or through an agent, attorney or other representative on behalf of ~~Sherrill Calhoun D/B/A Triple C Construction~~

(hereinafter referred to as "Principal"); and, whereas, the undersigned understand that the Surety expressly requires the delivery of this Indemnity Agreement as part of the consideration for the execution by the Surety of such Bonds which may hereafter be furnished, or for the refraining from canceling said Bonds;

NOW, THEREFORE, in consideration of the premises and of other good and valuable consideration, Indemnitors, for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally covenant and agree with the Surety, its successors and assigns, as follows:

### 1. DEFINITIONS

The following definitions apply in this Agreement:

*Bond* - Any contractual obligation undertaken by the Surety or Principal as principal, joint venturer or in any other capacity, before or after the date of this Agreement, and any renewal or extension of said obligation.

*Principal* - The person or entity set forth above or any one or combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not.

*Surety* – American Southern Insurance Company, its reinsurers, and any other person or entity which the Surety may procure to act as surety or co-surety on any Bond or any other person or entity who executes any Bond at its request.

*Contract* – Any Agreement of Principal, the performance of which is bonded by Surety.

### 2. INDEMNITY

The Indemnitors will pay, when due, all premiums for each of such Bonds in accordance with the Surety's regular rates in effect on the date such Bonds becomes effective, as long as liability thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety of its discharge or release from the Bonds, or of all liability by reason thereof. The Indemnitors agree and bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, to indemnify and save harmless Surety from and against any and all liability, loss, costs, damages or expenses of whatever nature or kind and arising out of or in any way connected with such Bonds, including but not limited to fees of attorneys and other expenses, cost and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of such bonds and attempting to recover losses or expenses from Indemnitors or third parties, whether the Surety shall have paid or incurred same, as aforesaid. The Indemnitors will indemnify the Surety against any and all liability, loss, damages, fees of attorneys, and other expenses which the Surety may sustain or incur by reason of or reliance upon representations made by the Indemnitors regarding defenses available to Principal and/or Surety to claims made against any such Bonds. In furtherance of such indemnity:

A. Surety shall have the right in its sole discretion to determine whether any suits or claims shall be paid, compromised, defended, prosecuted or appealed and to pay out such sums as it deems necessary to accomplish any of those purposes and its determination as to whether such suit or claim should be settled or defended shall be binding and conclusive on Indemnitors. Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expense for investigative, accounting, engineering and legal services. Surety shall have the foregoing rights, irrespective of the fact that Indemnitors may have assumed, or offered to assume, the defense of Surety upon such claim. In any claim or suit hereunder, an itemized statement of aforesaid loss and expense, sworn to by an officer or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of Indemnitors.

B. Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety. If the Surety has cause to enforce the terms of this Indemnity Agreement by filing suit against Indemnitors to recover sums due under this Agreement, it is understood by the Principal and Indemnitors that the Surety may recover its further expenses of such litigation, accrued interest and including 25% of such sums as attorneys' fees. Any debt accrued by the Surety, on behalf of Principal and Indemnitors will accrue interest at 12% per annum.

C. Surety shall have the right, and is hereby authorized, but not required, to defend in the name of Principal, or in the name of Principal to adjust, settle or compromise any claim demand, suit or judgment upon any of said Bonds unless Indemnitors shall, in writing, request Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, or otherwise to resist any such, and shall, as a condition precedent, first deposit with Surety satisfactory collateral sufficient to pay on a current basis all expenses of such litigation, defense or appeal, including attorneys' fees, and to pay any judgment or judgments rendered or that may be rendered, plus interest, costs, expenses and attorneys' fees thereon. In any event, the provisions of the following paragraph will apply.

D. If Surety shall deem itself insecure or be required to or shall in its sole discretion deem it necessary to pay for or to set up a reserve in any amount to cover any actual, contingent or potential claim or claims, loss, costs, attorneys' fees or other expenses of any kind under or because of any Bonds executed by or for any Principal, or for any reason whatsoever shall find it necessary to pay the costs to defend, settle, compromise or adjust any such claims, including attorneys' fees. Indemnitors will immediately, upon demand, deposit with Surety funds in the amount of such reserve and any increase thereof, such funds to be held by Surety as collateral, or in the amount of such payments to be used by Surety in the payment, settlement, compromise or adjusting of any such claims, including any attorneys' fees, costs or expenses related thereto or the amount of such payments to be retained by Surety as reimbursement therefore. Surety shall have no obligation to invest, or to provide a return on, the deposit.

E. Surety shall have the right, but not the duty, to defend or to intervene, in the name of Principal, in any action at law or in equity brought by any party in which the allegation is made, either expressly or implied, that Principal has failed to perform any contract or other duties or obligations, the performance of which are secured by any Bond covered by this Agreement. In such event, the provisions of the previous paragraph shall also apply.

F. The Principal agrees and hereby expressly declares that all funds due or to become due under any Contract covered by a Bond are trust funds, whether in the possession of the Principal or another, for the benefit and payment of all persons to whom the Principal incurs obligations in the performance of such Contract, for which the Surety would be liable under the Bond. If the Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds. Principal shall, upon demand of the Surety and in implementation of said trust, set up a separate account, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received pursuant to said contract or contracts. Withdrawals from such account shall be by check or similar instrument signed by the Principal and countersigned by the representative of the Surety. Said trust or trusts shall terminate on the payment by Principal of all the contractual obligations for the payment of which the trust or trusts are hereby cre[...] 20 years from the date hereof, whichever shall first occur. The Principal agrees and hereby expressly declares that title to all ma[...] ordered or fabricated for any contract covered by a Bond shall be held in trust for the benefit of the owner of the improvement bei[...] shall be subject to the direction of owner and Surety.

Original In Fireproof Cabinet    *ASIC*

**EXHIBIT**

**A**

**INSTRUCTIONS**

1. If Proprietorship, applicant and spouse sign as Principals. 2. If Partnership, partners sign and spouses sign as Indemnitors. 3. If Corporation, two authorized officers sign. All owners and spouses must also sign as individual indemnitors, Corporate resolution to be attached. The undersigned hereby expressly waive any notice of the *acceptance* of this Agreement by Surety.

PRINCIPAL-INDEMNITOR(S) Sherrill Calhoun          CORPORATE SEAL          EIN #

Firm Name D/B/A Triple C Construction

BY _V _Sherill Calhoun_____          Sherrill Calhoun_____          _____
        Signature and Title          Print Name and Title

BY _____          _____          _____
        Signature and Title          Print Name and Title

BY _____          _____          _____
        Signature and Title          Print Name and Title

BY _____          _____          _____
        Signature and Title          Print Name and Title

INDIVIDUAL INDEMNITORS

Signature _Sherill Cala_____          Signature _Ruby Calhoun_____
Sherrill Calhoun          Ruby Calhoun
Business Address Rt. 1 Box 63, Banks, AL 36005          Business Address _____

Telephone 334-243-5174          Telephone _____

Residence Address 4410 Cty. Rd 6636, Banks, AL 36005          Residence Address 4410 Cty. Rd 6636, Banks, AL 36005

Telephone _____          Telephone _____

SS # 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          SS # 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

Signature _____          Signature _____

Business Address _____          Business Address _____

Telephone _____          Telephone _____

Residence Address _____          Residence Address _____

Telephone _____          Telephone _____

SS # _____          SS # _____

STATE OF Alabama

COUNTY OF Pike          } ss.:          (Stamp & Seal)

On this 1st day of March , 2004 , before me personally came Sherrill Calhoun                    ,
to me known and known to me to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed the same.

_Jeanne Garrett_____
Notary Public

STATE OF Alabama

COUNTY OF Pike          } ss.:          (Stamp & Seal)

On this 1st day of March , 200 4 , before me personally came Ruby Calhoun                    ,
to me known and known to me to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed the same.

_Jeanne Garrett_____
Notary Public

STATE OF_____

COUNTY OF_____          } ss.:          (Stamp & Seal)

On this _____ day of _____ , 200 ___ , before me personally appeared _____ ,

to me known, who being by me duly sworn, did depose and say: that he resided at _____ ,

that he is the _____ of _____
the corporation described in and which executed the foregoing instrument; that he knew the seal of said corporation; that the seal affixed to said instrument was such corporate seal; that it was affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
Notary Public

STATE OF_____

COUNTY OF_____          } ss.:          (Stamp & Seal)

On this _____ day of _____ , 200 ____ , before me personally appeared _____

to me known and known to me to be one of the firm of _____
described in and who executed the foregoing instrument, and he thereupon acknowledged to me that he executed the same as and for the act and deed of said firm.

FORM NO. IF SOS-es

_____
Notary Public

Individual Acknowledgement

Individual Acknowledgement

Corporate Acknowledgement

Firm Acknowledgement

**6**

PROPOSAL NO. _____
FOR THE CONSTRUCTION OF FEDERAL AID
PROJECT NOS. ACGBBRZ-3400(205) & ACGBBRZ-3400(204)
HENRY COUNTY, ALABAMA

CONTRACT ID: 20040116019



**NON-TRANSFERABLE**

CONTRACTOR #  _____20048_____

DATE: **January 16, 2004**

PROPOSAL OF  _____TRIPLE C CONSTRUCTION_____

LICENSE NO. _23274_____  OF  _____BANKS, AL_____

for constructing the Bridge Replacements (2 Bridge Culverts) on C.R.#66 at Ward Creek northeast of Newville and on C.R.#90 at Cat Branch Creek north of Abbeville. Length - 0.021 mi. In the County(S) of HENRY, State of Alabama.

The plans are composed of the drawings identified as follows:

**FEDERAL AID PROJECT NOS. ACGBBRZ-3400(205) & ACGBBRZ-3400(204)**

The specifications are hereto attached.

TO THE ALABAMA DEPARTMENT OF TRANSPORTATION DIRECTOR:

SIR: The following proposal is made on behalf of the undersigned and no others. Evidence of authority to submit the proposal is herewith furnished.

The undersigned has carefully examined the plans for this project, the Alabama Department of Transportation Standard Specifications, 2002 Edition, including the special provisions hereto attached, and has also personally examined the site of work. On the basis of the specifications and plans, the undersigned proposes to furnish all necessary machinery, tools, apparatus and other means of construction, and do all the work and furnish all material in the manner specified.

The undersigned further agrees to complete the entire project in One Hundred Eighty (180) calendar days. **(See Special Provision No. 02-0716)**

The undersigned understands that the quantities below are approximate only and are subject to either increase or decrease and hereby proposes to perform any increased or decreased quantities of work in accordance with said Specifications. The undersigned further understands and specifically agrees that in making this proposal, in case of error in the extension of prices in the bid, the unit price will govern.



EXHIBIT
B

```
                 ALABAMA DEPARTMENT OF TRANSPORTATION     PAGE  : 2
                                                          DATE  :
                            CONTRACT SCHEDULE             REVISED:

CONTRACT ID: 20040116019        PROJECT(S):ACGBBRZ-3400(205)
                                           ACGBBRZ-3400(204)
---------------------------------------------------------------------------
LINE|        ITEM        |    APPROX.    |   UNIT PRICE   |   BID AMOUNT
NO  |    DESCRIPTION     |   QUANTITY    |----------------|---------------
    |                    |   AND UNITS   | DOLLARS | CTS | DOLLARS  |CTS
---------------------------------------------------------------------------

SECTION 0001  Total

---------------------------------------------------------------------------
    |201A001 Clearing And|              |              |
0010|Grubbing (Maximum   |LUMP          |LUMP          |        1,500.00
    |Allowable Bid $3000 Per|           |              |
    |Acre) (Approximately 1|            |              |
    |Acre)               |              |              |
---------------------------------------------------------------------------
    |206A000 Removal Of Old|            |              |
0020|Bridge, Station  10+37.|LUMP       |LUMP          |        1,000.00
    |00                  |              |              |
---------------------------------------------------------------------------
    |206A001 Removal Of Old|            |              |
0030|Bridge, Station  11+61.|LUMP       |LUMP          |        1,000.00
    |09                  |              |              |
---------------------------------------------------------------------------
    |210B000 Channel     |              |              |
0040|Excavation          |     550.000 |      5.00000 |        2,750.00
    |                    |CUYD          |              |
---------------------------------------------------------------------------
    |214A000 Structure   |              |              |
0050|Excavation          |     792.000 |      5.00000 |        3,960.00
    |                    |CUYD          |              |
---------------------------------------------------------------------------
    |214B001 Foundation  |              |              |
0060|Backfill, Commercial|     419.000 |     29.00000 |       12,151.00
    |                    |CUYD          |              |
---------------------------------------------------------------------------
    |502A000 Steel       |              |              |
0070|Reinforcement       |  70,002.000 |      0.55000 |       38,501.10
    |                    |LB            |              |
---------------------------------------------------------------------------
    |524A011 Culvert Concrete|          |              |
0080|(Cast In Place)     |     400.000 |    335.00000 |      134,000.00
    |                    |CUYD          |              |
---------------------------------------------------------------------------
    |600A000 Mobilization|              |              |
0090|                    |LUMP          |LUMP          |       27,916.00
    |                    |              |              |
---------------------------------------------------------------------------
```

```
        ALABAMA DEPARTMENT OF TRANSPORTATION       PAGE   : 3
                                                   DATE   :
                   CONTRACT SCHEDULE               REVISED:

CONTRACT ID: 20040116019        PROJECT(S):ACGBBRZ-3400(205)
                                           ACGBBRZ-3400(204)
```

| LINE NO | ITEM DESCRIPTION | APPROX. QUANTITY AND UNITS | UNIT PRICE DOLLARS | CTS | BID AMOUNT DOLLARS | CTS |
|---|---|---|---|---|---|---|
| 0100 | 610C001 Loose Riprap, Class 2 | 1,392.000 TON | 27.50000 | | 38,280.00 | |
| 0110 | 610D003 Filter Blanket, Geotextile | 1,032.000 SQYD | 3.50000 | | 3,612.00 | |
| 0120 | 665F000 Hay Bales | 50.000 EACH | 6.00000 | | 300.00 | |
| 0130 | 665J000 Silt Fence, Type A | 200.000 LF | 5.00000 | | 1,000.00 | |
| 0140 | 680A000 Engineering Controls | LUMP | LUMP | | 1,000.00 | |
| 0150 | 740B000 Construction Signs | 279.000 SQFT | 10.00000 | | 2,790.00 | |
| 0160 | 740F002 Barricades, Type III | 14.000 EACH | 150.00000 | | 2,100.00 | |
| 0170 | 740I005 Warning Lights, Type B (Detachable Head) | 6.000 EACH | 100.00000 | | 600.00 | |
| | TOTAL BID | | | | 272,460.10 | |

FEDERAL-AID FUNDED PROJECTS

PLEASE READ AND COMPLETE SECTIONS A AND B. THE EXECUTION HEREINAFTER MADE
ALSO CONSTITUTES THE EXECUTION OF THE PROPOSAL AND REPRESENTS THE AGREEMENT
OF THE CONTRACTOR TO COMPLY WITH ALL DOCUMENTS CONTAINED IN THE PROPOSAL
AND THOSE REFERRED TO THEREIN.  FAILURE TO SUBMIT THE SWORN CERTIFICATION
THROUGH PAGE 8 OF THIS NOTICE AS A PART OF THE BID PROPOSAL PACKAGE WILL BE
CONSIDERED A NON-RESPONSIVE BID.  BID BOND MUST BE SEPARATELY EXECUTED BY
CONTRACTOR AND SURETY.

The contractor, subrecipient, or subcontractor shall not discriminate on the
basis of race, color, national origin, or sex in the performance of this contract.
The contractor shall carry out applicable requirements of 49 CFR Part 26 in the
award and administration of USDOT-assisted contracts.  Failure by the contractor
to carry out these requirements is a material breach of this contract, which may
result in termination of this contract or such other remedy as the recipient deems
appropriate.

The Statement Required To Be Submitted By Proposed Contractor Pursuant To
Notice of Requirement For Affirmative Action To Ensure Equal Employment
Opportunity (Executive Order 11246) And Regulations In 41 CFR Part 60-4 On
All Federal And Federally-Assisted Contracts In Excess of $10,000 Will Be
Included In The Award Of Your Contract And Should Be Returned With Your
Executed Contract.

The undersigned agrees that the terms and commitments contained herein shall
not be constituted as a debt of the State of Alabama in violation of
Article 11, Section 213 of the Constitution of Alabama, 1901, as amended by
Amendment Number 26.  It is further agreed that if any provision of this
contract shall contravene any statute or Constitutional provision or
amendment, either now in effect or which may, during the course of this
contract, be enacted, then that conflicting provision in the contract shall
be null and void.

The undersigned understands that in the event the term of this contract
includes more than one fiscal year, said contract is subject to termination
should funds not be appropriated for the continued payment of the contract
in subsequent fiscal years.

The undersigned understands that in the event of the proration of the fund
from which payment under this contract is to be made, the contract will be
subject to termination.

Section A: The Alabama Department of Transportation is obligated on every
Federal-aid project to implement, to the extent practical, 49CFR26,
"Participation by Disadvantaged Business Enterprises (DBE in U.S.DOT
Financial Programs".  This participation can be achieved by race neutral
and/or race conscious means.

When race conscious means are used the contract goal for DBE participation
will be indicated below and in special provision 02-0106(2).  Race neutral
participation occurs when the contractor exceeds the indicated contract goal,
or in the absence of a contract goal, obtains participation from a certified
DBE that meets the CREDIT TOWARD PARTICIPATION portion of special provision
02-0106(2).

PROJECT NOS: ACGBBRZ-3400(205) & ACGBBRZ-3400(204)

The Department has determined that this project has sufficient opportunities for
DBE participation.  The goal for this contract has been established as  0.00
percent of the original contract.

Revised: 07/02

PAGE: 2 of 8

All bidders must complete form HR-DBE, "BIDDERS LIST OF QUOTERS FOR THE DISADVANTAGED BUSINESS ENTERPRISE (DBE) PROGRAM."

If the contractor is low bidder for the project, it is understood the contractor will provide a DBE Utilization Plan which outlines the proposed percentage of DBE Utilization within ten (10) calendar days after notification by the Department of intent to award, along with documentation of the contractor's "Good Faith" efforts to utilize DBE firms if the proposed percentage of utilization is less than the designated project goal.  The contractor's good faith efforts will fully comply with and meet all requirements, provisions and criteria of Title 49, Code of Federal Regulations, Part 26, including the criteria set forth in 49 CFR, Section 23.26, Appendix A and will comply with and meet the requirements, provisions and criteria set forth in Special Provision Number 02-0106(2) of this contract as all of such foregoing requirement, provisions and criteria are applicable to Disadvantaged Business Enterprises, all of which the contractor represents that he is familiar.  The contractor understands that the good faith efforts of the contractor will be reviewed by the Department in keeping with all such requirements, provisions and criteria.

NOTE

The Department will advise the low bidder of his status as soon as possible after the opening of bids.

A copy of the Department's DBE Utilization form has been attached to this proposal for use in complying with the requirement.

Failure by the successful bidder to provide an acceptable DBE Utilization plan within the time frame required of the successful bidder to make and document Good Faith Efforts, when applicable, will result in non-award of the contract to that bidder.  If the contract is awarded to the next low bidder, the original low bidder will be prohibited from doing any work on the contract, either as subcontractor or in any other capacity.  The original low bidder will also be prohibited from bidding on the project if it is readvertised for letting.  These restrictions shall apply to any other name under which the same person, individual, partnership, company, firm, corporation, association, co-operative or other legal entity that may be operating in which the principal owner(s) is involved.

Section B: CONTRACTOR'S CERTIFICATION

The contractor proposes to perform all "Force Account of Extra Work" that may be required on the basis provided in the Specifications hereto attached, and to give such work personal attention in order to see that it is economically performed.

The contractor further proposes to execute the Contract Agreement in a form to be attached as soon as the work is awarded to the contractor and to begin and complete the work within the respective time limit provided for in the Specifications hereto attached.

The contractor also proposes to furnish a Performance Bond, acceptable to the State, in an amount equal to the total amount of the contract.  This bond shall serve not only to guarantee the completion of the work but also to guarantee the excellence of both workmanship and materials until the work is finally accepted.  The contractor will also furnish a materialsman bond, acceptable to the State, equal to the amount of the contract.

Revised: 07/02

PAGE: 3 of 8

The contractor encloses a cashier's check or bid bond for five percent (5%) of the bid, maximum $10,000.00, and hereby agrees that in case of failure to execute a contract and furnish bonds within fifteen (15) days after notice of award, the awarding authority shall retain from the proposal guaranty, if it is a cashier's check, or recover from the principal and/or the sureties, if the guaranty is a bid bond, the difference between the amount of the Contract as awarded and the amount of the proposal of the next lowest acceptable bidder, which amount shall not exceed $10,000.00. If no other bids are received, the full amount of the proposal guaranty shall be so retained and/or recovered as Liquidated Damages for such default. It is understood that in case the work is not awarded to the contractor, the proposal guaranty, if a cashier's check, will be returned as provided in the Alabama Department of Transportation Standard Specifications, 2002 Edition.

1. DISADVANTAGED BUSINESS ENTERPRISES

The contractor intends to comply with the contract documents to utilize Disadvantaged Business Enterprises (hereinafter referred to at times as (DBE)) to the extent practical and when, under Section A herein above, the contract documents specify a minimum monetary amount to be expended with Disadvantaged Business Enterprises, to equal or exceed said amount through subcontracting and/or by purchases of materials and services on the project.

It is understood that failure to submit a Disadvantaged Business Enterprise Plan, when such is required by the contract within the time frame so specified, will be cause for assessment of penalties as provided in the contract.

It is further understood that failure to comply with the contract relating to Disadvantaged Business Enterprises, when such are applicable, will be cause for the assessment of penalties as provided in the contract.

2. REQUIREMENT BY THE EQUAL EMPLOYMENT OPPORTUNITY REGULATIONS OF THE SECRETARY OF LABOR (41 CFR 60-1.7(b)(1))

The Contractor must check the appropriate box below:

The contractor submitting this proposal certifies that such contractor

        HAS / ✓ /            HAS NOT /_____/

participated in a previous contract or subcontract subject to the Equal Opportunity Clause, as required by Executive Orders 10925, 1114 or 11246.

If the contractor checked the HAS box above, the following statement must be completed. The contractor submitting this proposal certifies that such contractor

        HAS / ✓ /            HAS NOT /_____/

filed with the Joint Reporting Committee, the director of OFCC, any Federal Agency or the former President's Committee on Equal Employment Opportunity all reports due under the applicable filing requirements of those organizations. All reports due are considered to be those requested by one of these committees or agencies.

Concurrently, Standard Form 100 (EEO-1) is the only report required by the Executive Orders or their implementing regulations.

Revised: 07/02

PAGE 4 of 8

Proposed prime contractors and subcontractors who have participated in a previous contract or subcontract subject to the Executive Orders and who have not filed the required reports should note that 41 CFR 60-1.7(b)(1) prevents the award of contracts and subcontracts unless such contractor submits a report covering the delinquent period or such other period specified by the Federal Highway Administration or by the director, Office of Federal Contract Compliance, U. S. Department of Labor.

3. COLLUSION

It is further certified that neither the person, firm, partnership or corporation submitting this bid, nor any of their officers, have directly or indirectly entered into any agreement, participated in any collusion or otherwise taken any action in restraint of free competitive bidding in connection with this contract.

4. SUSPENSION/DEBARMENT

A.  Certification Regarding Debarment, Suspension and Other Responsibility Matters - Primary Covered Transactions

Instructions for Certification

By signing and submitting this proposal, the prospective primary participant is providing the certification set out below.

The inability of a person to provide the certification required below will not necessarily result in denial of participation in this covered transaction.  The prospective participant shall submit an explanation of why it cannot provide the certification set out below.  The certification or explanation will be considered in connection with the department or agency's determination whether to enter into this transaction.  However, failure of the prospective primary participant to furnish a certification or an explanation shall disqualify such person from participation in this transaction.

The certification in this clause is a material representation of fact upon which reliance was placed when the department or agency determined to enter into this transaction.  If it is later determined that the prospective primary participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency may terminate this transaction for cause of default.

The prospective primary participant shall provide immediate written notice to the department or agency to whom this proposal is submitted if at any time the prospective primary participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

The terms "covered transaction", "debarred", "suspended", "ineligible", "lower-tier covered transaction", "participant", "person", "primary covered transaction", "principal", "proposal" and "voluntarily excluded" as used in this clause, have the meanings set out in the Definitions and Coverage sections of the rules implementing Executive Order 12549.  You may contact the department or agency to which this proposal is being submitted for assistance in obtaining a copy of those regulations.

The prospective primary participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower-tier covered transaction with a person who is debarred, suspended, declared ineligible or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency entering into this transaction.

The prospective primary participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion/Lower-Tier Covered Transactions," provided by the department or agency entering into this covered transaction, without modification, in all lower-tier covered transactions and in all solicitations for lower-tier covered transactions.

A participant in a covered transaction may rely upon a certification of a prospective participant in a lower-tier covered transaction that it is not debarred, suspended, ineligible or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

Except for transactions authorized under these instructions, if a participant in a covered transaction knowingly enters into a lower-tier covered transaction with a person who is suspended, debarred, ineligible or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency may terminate this transaction for cause or default.

Certification Regarding Debarment Suspension and Other Responsibility Matters – Primary Covered Transactions

The prospective primary participant certifies, to the best of its knowledge and belief, that it and its principals:

Are not presently debarred, suspended, proposed for department, declared ineligible or voluntarily excluded from covered transactions by any Federal department or agency;

Have not within a three-year period preceding this proposal been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements or receiving stolen property;

Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in the preceding paragraph of this certification; and

Revised: 07/02

Have not within a three-year period preceding this application/proposal had one or more public transactions (Federal, State or local) terminated for cause or default.

Where the prospective primary participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

B.  For Lower-Tier Requirements, see Section XI of "Required Contract Provisions Federal-Aid Construction Contracts" located in the proposal.

Exceptions to the above are to be submitted on a separate sheet with the bid proposal.  For any exception noted, indicate to whom it applies, initiating agency and dates of action.  Providing false information may result in criminal prosecution or administrative sanctions.

5. LOBBYING RESTRICTIONS

These restrictions were established by Section 319 of Public Law 101-121 (Department of the Interior and Related Agencies Appropriations Act for Fiscal Year 1990).

The contractor certifies to the best of his/her knowledge and belief that:

A.  No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any Federal agency, a Member or Congress, an officer or employee of Congress or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement and the extension, continuation, renewal, amendment or modification of any Federal contract grant, loan or cooperative agreement.

B.  If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any Federal agency, a Member of congress, an officer or employee of Congress or an employee of a Member of congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into.  Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code.  Any person who fails to file this required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

The contractor also agrees by submitting this proposal that he/she shall require that the language of this certification be included in all lower-tier subcontracts which exceed $100,000 and that all such subrecipients shall certify and disclose accordingly.

Revised: 07/02

PAGE: 7 of 8

6. BEST MANAGEMENT PRACTICES PLAN (BMP)

When a BMP is not required on a project, the following certification shall
not apply. When a BMP is required, it will be covered by a Special
provision or Supplemental specification and included in the proposal, and
the following certification shall apply and the contractor shall mark any
documents he proposes to use other than #1, #2 and #3.

I certify that I am aware of the Best Management Practices for the
prevention and minimization of nonpoint sources of pollution in storm water
runoff contained and described in documents #1, #2 and #3 and other
documents as marked below. I certify that all appropriate pollution
abatement/prevention facilities, and structural and nonstructural BMPs, as
described in these documents, or Department approved equivalent BMPs will
be implemented and maintained as needed at the facility in accordance with
good engineering practices and ADEM regulations under the guidance of a
qualified pollution prevention/control professional. I understand that
full implementation and regular maintenance of the BMPs will be
requirements for coverage under the general permit. I am aware there are
significant penalties for submitting false information, including possible
fines and imprisonment for knowing violations. I understand that, at the
signing of the bid proposal, I become a co-permittee with the Department if
awarded the contract.

1. ALABAMA NONPOINT SOURCE MANAGEMENT PROGRAM DOCUMENT, as amended,
prepared by ADEM, Water Division - Mining and Nonpoint Source Section, in
accordance with Section 319 of the Federal Clean Water Act, as amended.

2. EPA STORMWATER POLLUTION PREVENTION FOR CONSTRUCTION ACTIVITIES, Office
of Wastewater Enforcement and Compliance, U.S. Environmental Protection
Agency, Washington, D.C. 20460, as amended.

3. AASHTO GUIDELINES FOR EROSION AND SEDIMENT CONTROL IN HIGHWAY
CONSTRUCTION, Volume III, 1992, Prepared by the Task Force on Hydrology and
Hydraulics, AASHTO Highway Subcommittee on Design.

____ BEST MANAGEMENT PRACTICES PLAN - MAGNOLIA PIPELINE, Basin Pipeline
Corporation, 2101 Sixth Avenue North, Birmingham, AL 32503.

____ BEST MANAGEMENT PRACTICES FOR NONPOINT SOURCE RUNOFF CONTROL, MOBILE &
BALDWIN COUNTIES, ALABAMA, South Alabama Regional Planning Commission,
January 1989.

____ BEST MANAGEMENT PRACTICES FOR CONTROLLING SEDIMENT AND EROSION FROM
CONSTRUCTION ACTIVITIES, Birmingham Regional Planning Commission, August
1980.

____ BEST MANAGEMENT PRACTICES FOR AGRICULTURAL NONPOINT SOURCE CONTROL,
VOLUME III - SEDIMENT, North Carolina Agricultural Extension Service,
Biological and Agricultural Engineering Department, North Carolina State
University, August 1982.

____ Other: _____
_____
_____

Revised: 07/02

PAGE: 8 of 8

I further certify that I am the proper authorized individual or corporate official, as applicable, to make this certification that the above is true and correct and that I am the same person executing the Bid Bond on the following two pages; and that I recognize, by signing this certification, I am also signing the contract proposal on behalf of the contractor in whose name the proposal is made, whether individual, partnership or corporation as might be applicable.

NOTE: PROVIDED THE BID BOND ON THE FOLLOWING TWO PAGES IS PROPERLY EXECUTED IN THE CONTRACOTR'S NAME, SIGNED BY THE PROPER OFFICER OF THE CONTRACTOR CORPORATION (OR INDIVIDUAL OR PARTNER, WHEN NOT A CORPORATION), THE PERSON EXECUTING THE BID BOND MAY MAKE THE FOREGOING CERTIFICATIONS BY SIGNING BEFORE A NOTARY PUBLIC AFTER BEING SWORN. THE CERTIFICATIONS MUST BE PROPERLY SWORN TO, SIGNED AND NOTARIZED BELOW.

Signature of Contractor: If a contractor is INDIVIDUAL, signature of individual is required; if contractor is a CORPORATION, signature of proper corporate officer is required; if contractor is a PARTNERSHIP, signature of partner is required; if contractor is JOINT VENTURE, appropriate signatures of all contractors are required.

Legal name of Contractor:

Triple C Construction

(Partnership, Joint Venture, Corporation or Individual)

By: _____

(Signature of Officer or Individual, as applicable, as signing Bid Bond)

By: _____

IF JOINT VENTURE (Signature of Officers or Individual, as applicable, as signing Bid Bond)

The foregoing certifications are sworn to and subscribed before me on this 10th day of January , 20 04 .

_____
NOTARY PUBLIC

PROPOSAL WILL NOT BE ACCEPTED UNLESS THIS FORM IS COMPLETED AND SIGNED. FAILURE TO COMPLETE, SIGN AND SUBMIT THIS SWORN STATEMENT AS PART OF THE BID PACKAGE WILL BE CONSIDERED A NON-RESPONSIVE BID.

PROPOSAL WILL NOT BE ACCEPTED UNLESS THIS FORM FOR BID BOND IS USED, AND
BIDS WILL NOT BE CONSIDERED UNLESS THIS FORM IS SIGNED BY PRINCIPAL AND
SURETY OR A CASHIER'S CHECK (DRAWN ON AN ALABAMA BANK) IN THE PROPER
AMOUNT IS FURNISHED.

# FORM OF BID BOND

KNOW ALL MEN BY THESE PRESENTS:

That the contractor, as Principal, and   American Southern Insurance Company

(Name of Surety)

        1301 Hightower Trail, Suite 210
        Atlanta, GA 30350                                      , as Surety, are held and firmly

(Address)

bound unto   ALABAMA DEPARTMENT OF TRANSPORTATION

as Obligee in the full and just sum of five percent (5%) of amount bid (Maximum amount - $10,000.00),
lawful money of the United States, for the payment of which sum, well and truly to be made, we bind
ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally firmly by
these presents.

        WHEREAS, the said Principal is herewith submitting its proposal for

Project Number(s)  ACGBBRZ-3400 (205)   ,   County  HENRY
            ACGBBRZ-3400 (204)

The condition of this obligation is such that:

    If the aforesaid Principal shall be awarded the contract and said Principal will, within the time required,
enter into a formal contact and give a good and sufficient bond to secure the performance of the terms and
conditions of the contract, then this obligation will be void; otherwise, the Principal and the Surety will pay
unto the Obligee the difference in money between the amount of the contract as awarded and the amount of
the proposal of the next lowest acceptable bidder, but not to exceed the total amount of the proposal guaranty.
If no other bids are received, the full amount of the proposal guaranty shall be retained and/or recovered as
liquidated damages for such default.

Witness our hands and seals this _____16TH_____ day of ____JANUARY____ , ____2004____

Page 1 of 2

ACGBBRZ-3...J (204)

SIGNATURE OF INDIVIDUAL BIDDER:        (USE ONLY WHERE BIDDER IS AN INDIVIDUAL)

**SHERRILL CALHOUN** _, Doing Business As,_ **TRIPLE C. CONSTRUCTION_**
    (Name of Individual)                              (Business Name)
Business Mailing Address:    Rt. 1 Box 63, Banks, AL 36005

NAME OF PARTNERSHIP, JOINT VENTURE OR CORPORATION:

    (Name of Partnership, Joint Venture or Corporation*) - (If Two Corporations**)

Business Mailing
Address _Rt 1 Bax 63_      BY: ✓ _Sherril Cur_    (L.S.)
    _Banks, AL 36005_

Business Mailing
Address_____ BY: _____(L.S.)

_____

Business Mailing
Address_____ BY: _____(L.S.)

_____

* (Corporate Seal)                  Name of State under the laws of which the
Attest:                                Corporation was chartered:

_____        _____
    (Secretary)

**(Corporate Seal)               Name of State under the laws of which the
Attest:                                Corporation was chartered:

_____        _____
    (Secretary)

                              **American Southern Insurance Company**
                                    (Name of Surety)
                      BY: _____
                    Donald H. Gibbs ; (Attorney-in-Fact)

                      _____

**PROPOSAL WILL NOT BE ACCEPTED <u>UNLESS THIS FORM</u> FOR BID BOND <u>IS USED,</u> AND BIDS WILL NOT BE CONSIDERED UNLESS THIS FORM IS SIGNED BY PRINCIPAL AND SURETY <u>OR</u> A CASHIER'S CHECK (DRAWN ON AN ALABAMA BANK) IN THE PROPER AMOUNT IS FURNISHED.**

SPECIAL PROVISIONS
PROJECT NOS. ACGBBRZ-3400(205) & ACGBBRZ-3400(204)
HENRY COUNTY, AL

The following clauses are a part of these specifications and have been
prepared subsequent to the foregoing.  In case of conflict, the
following are to take precedence.

---

S.P. CODE        SPECIAL PROVISIONS DESCRIPTION

---

| S.P. CODE | SPECIAL PROVISIONS DESCRIPTION |
|---|---|
| 003/94 | Form FHWA-1273 Required Contract Provisions Federal Aid Construction Projects |
| 02-0097 | Required Contract Provision for All Federal Aid Projects for E.E.O. |
| 02-0100-6 | Wage Rates for Various Counties |
| 02-0102 | Corps of Engineers Nationwide Construction Permit |
| 02-0105 | Stormwater Permit for County Projects |
| 02-0106(2) | Disadvantaged Business Enterprise (DBE) Contract Obligation |
| 02-0108 | Computer Diskette Bidding |
| 02-0125(2) | Payments to Subcontractors |
| 02-0127(2) | Proposal Guaranties and Execution of Contract |
| 02-0138(4) | Prosecution of Work |
| 02-0143(2) | Clearing and Grubbing |
| 02-0435 | Undercutting |
| 02-0437 | Disposal of Material off the Right of Way |
| 02-0553 | Density Requirements for Compaction |
| 02-0716 | Time of Beginning Work |
| NOTICE-02 | Notice to Contractors |

# REQUIRED CONTRACT PROVISIONS
## FEDERAL-AID CONSTRUCTION CONTRACTS

|  | | Page |
|---|---|---|
| I. | General | 1 |
| II. | Nondiscrimination | 1 |
| III. | Nonsegregated Facilities | 3 |
| IV. | Payment of Predetermined Minimum Wage | 3 |
| V. | Statements and Payrolls | 6 |
| VI. | Record of Materials, Supplies, and Labor | 6 |
| VII. | Subletting or Assigning the Contract | 7 |
| VIII. | Safety: Accident Prevention | 7 |
| IX. | False Statements Concerning Highway Projects | 7 |
| X. | Implementation of Clean Air Act and Federal Water Pollution Control Act | 8 |
| XI. | Certification Regarding Debarment, Suspension, Ineligibility, and Voluntary Exclusion | 8 |
| XII. | Certification Regarding Use of Contract Funds for Lobbying | 9 |

ATTACHMENTS

A.   Employment Preference for Appalachian Contracts (included in Appalachian contracts only)

## I. GENERAL

1. These contract provisions shall apply to all work performed on the contract by the contractor's own organization and with the assistance of workers under the contractor's immediate superintendence and to all work performed on the contract by piecework, station work, or by subcontract.

2. Except as otherwise provided for in each section, the contractor shall insert in each subcontract all of the stipulations contained in these Required Contract Provisions, and further require their inclusion in any lower tier subcontract or purchase order that may in turn be made. The Required Contract Provisions shall not be incorporated by reference in any case. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with these Required Contract Provisions.

3. A breach of any of the stipulations contained in these Required Contract Provisions shall be sufficient grounds for termination of the contract.

4. A breach of the following clauses of the Required Contract Provisions may also be grounds for debarment as provided in 29 CFR 5.12:

> Section I, paragraph 2;
> Section IV, paragraphs 1, 2, 3, 4, and 7;
> Section V, paragraphs 1 and 2a through 2g.

5. Disputes arising out of the labor standards provisions of Section IV (except paragraph 5) and Section V of these Required Contract Provisions shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the U.S. Department of Labor (DOL) as set forth in 29 CFR 5, 6, and 7. Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors) and the contracting agency, the DOL, or the contractor's employees or their representatives.

6. **Selection of Labor:** During the performance of this contract, the contractor shall not:

   a. discriminate against labor from any other State, possession, or territory of the United States (except for employment preference for Appalachian contracts, when applicable, as specified in Attachment A), or

   b. employ convict labor for any purpose within the limits of the project unless it is labor performed by convicts who are on parole, supervised release, or probation.

## II. NONDISCRIMINATION

(Applicable to all Federal-aid construction contracts and to all related subcontracts of $10,000 or more.)

1. **Equal Employment Opportunity:** Equal employment opportunity (EEO) requirements not to discriminate and to take affirmative action to assure equal opportunity as set forth under laws, executive orders, rules, regulations (28 CFR 35, 29 CFR 1630 and 41 CFR 60) and orders of the Secretary of Labor as modified by the provisions prescribed herein, and imposed pursuant to 23 U.S.C. 140 shall constitute the EEO and specific affirmative action standards for the contractor's project activities under this contract. The Equal Opportunity Construction Contract Specifications set forth under 41 CFR 60-4.3 and the provisions of the American Disabilities Act of 1990 (42 U.S.C. 12101 et seq.) set forth under 28 CFR 35 and 29 CFR 1630 are incorporated by reference in this contract. In the execution of this contract, the contractor agrees to comply with the following minimum specific requirement activities of EEO:

   a. The contractor will work with the State highway agency (SHA) and the Federal Government in carrying out EEO obligations and in their review of his/her activities under the contract.

   b. The contractor will accept as his operating policy the following statement:

   "It is the policy of this Company to assure that applicants are employed, and that employees are treated during employment, without regard to their race, religion, sex, color, national origin, age or disability. Such action shall include: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship, preapprenticeship, and/or on-the-job training."

2. **EEO Officer:** The contractor will designate and make known to the SHA contracting officers an EEO Officer who will have the responsibility for and must be capable of effectively administering and promoting an active contractor program of EEO and who must be assigned adequate authority and responsibility to do so.

3. **Dissemination of Policy:** All members of the contractor's staff who are authorized to hire, supervise, promote, and discharge employees, or who recommend such action, or who are substantially involved in such action, will be made fully cognizant of, and will implement, the contractor's EEO policy and contractual responsibilities to provide EEO in each grade and classification of employment. To ensure that the above agreement will be met, the following actions will be taken as a minimum:

d. In the event the union is unable to provide the contractor with a reasonable flow of minority and women referrals within the time limit set forth in the collective bargaining agreement, the contractor will, through independent recruitment efforts, fill the employment vacancies without regard to race, color, religion, sex, national origin, age or disability; making full efforts to obtain qualified and/or qualifiable minority group persons and women. (The DOL has held that it shall be no excuse that the union with which the contractor has a collective bargaining agreement providing for exclusive referral failed to refer minority employees.) In the event the union referral practice prevents the contractor from meeting the obligations pursuant to Executive Order 11246, as amended, and these special provisions, such contractor shall immediately notify the SHA.

8. **Selection of Subcontractors, Procurement of Materials and Leasing of Equipment:** The contractor shall not discriminate on the grounds of race, color, religion, sex, national origin, age or disability in the selection and retention of subcontractors, including procurement of materials and leases of equipment.

a. The contractor shall notify all potential subcontractors and suppliers of his/her EEO obligations under this contract.

b. Disadvantaged business enterprises (DBE), as defined in 49 CFR 23, shall have equal opportunity to compete for and perform subcontracts which the contractor enters into pursuant to this contract. The contractor will use his best efforts to solicit bids from and to utilize DBE subcontractors or subcontractors with meaningful minority group and female representation among their employees. Contractors shall obtain lists of DBE construction firms from SHA personnel.

c. The contractor will use his best efforts to ensure subcontractor compliance with their EEO obligations.

9. **Records and Reports:** The contractor shall keep such records as necessary to document compliance with the EEO requirements. Such records shall be retained for a period of three years following completion of the contract work and shall be available at reasonable times and places for inspection by authorized representatives of the SHA and the FHWA.

a. The records kept by the contractor shall document the following:

(1) The number of minority and non-minority group members and women employed in each work classification on the project;

(2) The progress and efforts being made in cooperation with unions, when applicable, to increase employment opportunities for minorities and women;

(3) The progress and efforts being made in locating, hiring, training, qualifying, and upgrading minority and female employees; and

(4) The progress and efforts being made in securing the services of DBE subcontractors or subcontractors with meaningful minority and female representation among their employees.

b. The contractors will submit an annual report to the SHA each July for the duration of the project, indicating the number of minority, women, and non-minority group employees currently engaged in each work classification required by the contract work. This information is to be reported on Form FHWA-1391. If on-the job training is being required by special provision, the contractor will be required to collect and report training data.

## III. NONSEGREGATED FACILITIES

(Applicable to all Federal-aid construction contracts and to all related subcontracts of $10,000 or more.)

a. By submission of this bid, the execution of this contract or subcontract, or the consummation of this material supply agreement or purchase order, as appropriate, the bidder, Federal-aid construction contractor, subcontractor, material supplier, or vendor, as appropriate, certifies that the firm does not maintain or provide for its employees any segregated facilities at any of its establishments, and that the firm does not permit its employees to perform their services at any location, under its control, where segregated facilities are maintained. The firm agrees that a breach of this certification is a violation of the EEO provisions of this contract. The firm further certifies that no employee will be denied access to adequate facilities on the basis of sex or disability.

b. As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, restrooms and washrooms, restaurants and other eating areas, timeclocks, locker rooms, and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive, or are, in fact, segregated on the basis of race, color, religion, national origin, age or disability, because of habit, local custom, or otherwise. The only exception will be for the disabled when the demands for accessibility override (e.g. disabled parking).

c. The contractor agrees that it has obtained or will obtain identical certification from proposed subcontractors or material suppliers prior to award of subcontracts or consummation of material supply agreements of $10,000 or more and that it will retain such certifications in its files.

## IV. PAYMENT OF PREDETERMINED MINIMUM WAGE

(Applicable to all Federal-aid construction contracts exceeding $2,000 and all related subcontracts, except for projects located on roadways classified as local roads or rural minor collectors, which are exempt.)

1. **General:**

a. All mechanics and laborers employed or working upon the site of the work will be paid unconditionally and not less often than once a week and without subsequent deduction or rebate on any account [except such payroll deductions as are permitted by regulations (29 CFR 3) issued by the Secretary of Labor under the Copeland Act (40 U.S.C. 276c)] the full amounts of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment. The payment shall be computed at wage rates not less than those contained in the wage determination of the Secretary of Labor (hereinafter "the wage determination") which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the contractor or its subcontractors and such laborers and mechanics. The wage determination (including any additional classifications and wage rates conformed under paragraph 2 of this Section IV and the DOL poster (WH-1321) or Form FHWA-1495) shall be posted at all times by the contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers. For the purpose of this Section, contributions made or costs reasonably anticipated for bona fide fringe benefits under Section 1(b)(2) of the Davis-Bacon Act (40 U.S.C. 276a) on

(3) Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeyman-level hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator for the Wage and Hour Division determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination.

(4) In the event the Bureau of Apprenticeship and Training, or a State apprenticeship agency recognized by the Bureau, withdraws approval of an apprenticeship program, the contractor or subcontractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the comparable work performed by regular employees until an acceptable program is approved.

b. Trainees:

(1) Except as provided in 29 CFR 5.16, trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the DOL, Employment and Training Administration.

(2) The ratio of trainees to journeyman-level employees on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed.

(3) Every trainee must be paid at not less than the rate specified in the approved program for his/her level of progress, expressed as a percentage of the journeyman-level hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman-level wage rate on the wage determination which provides for less than full fringe benefits for apprentices, in which case such trainees shall receive the same fringe benefits as apprentices.

(4) In the event the Employment and Training Administration withdraws approval of a training program, the contractor or subcontractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

c. Helpers:

Helpers will be permitted to work on a project if the helper classification is specified and defined on the applicable wage determination or is approved pursuant to the conformance procedure set forth in Section IV.2. Any worker listed on a payroll at a helper wage rate, who is not a helper under a approved definition, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed.

5. Apprentices and Trainees (Programs of the U.S. DOT):

Apprentices and trainees working under apprenticeship and skill training programs which have been certified by the Secretary of Transportation as promoting EEO in connection with Federal-aid highway construction programs are not subject to the requirements of paragraph 4 of this Section IV. The straight time hourly wage rates for apprentices and trainees under such programs will be established by the particular programs. The ratio of apprentices and trainees to journeymen shall not be greater than permitted by the terms of the particular program.

6. Withholding:

The SHA shall upon its own action or upon written request of an authorized representative of the DOL withhold, or cause to be withheld, from the contractor or subcontractor under this contract or any other Federal contract with the same prime contractor, or any other Federally-assisted contract subject to Davis-Bacon prevailing wage requirements which is held by the same prime contractor, as much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the contractor or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work, all or part of the wages required by the contract, the SHA contracting officer may, after written notice to the contractor, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

7. Overtime Requirements:

No contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers, mechanics, watchmen, or guards (including apprentices, trainees, and helpers described in paragraphs 4 and 5 above) shall require or permit any laborer, mechanic, watchman, or guard in any workweek in which he/she is employed on such work, to work in excess of 40 hours in such workweek unless such laborer, mechanic, watchman, or guard receives compensation at a rate not less than one-and-one-halftimes his/her basic rate of pay for all hours worked in excess of 40 hours in such workweek.

8. Violation:

Liability for Unpaid Wages; Liquidated Damages: In the event of any violation of the clause set forth in paragraph 7 above, the contractor and any subcontractor responsible thereof shall be liable to the affected employee for his/her unpaid wages. In addition, such contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory) for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer, mechanic, watchman, or guard employed in violation of the clause set forth in paragraph 7, in the sum of $10 for each calendar day on which such employee was required or permitted to work in excess of the standard work week of 40 hours without payment of the overtime wages required by the clause set forth in paragraph 7.

b. Maintain a record of the total cost of all materials and supplies purchased for and incorporated in the work, and also of the quantities of those specific materials and supplies listed on Form FHWA-47, and in the units shown on Form FHWA-47.

c. Furnish, upon the completion of the contract, to the SHA resident engineer on Form FHWA-47 together with the data required in paragraph 1b relative to materials and supplies, a final labor summary of all contract work indicating the total hours worked and the total amount earned.

2. At the prime contractor's option, either a single report covering all contract work or separate reports for the contractor and for each subcontract shall be submitted.

## VII. SUBLETTING OR ASSIGNING THE CONTRACT

1. The contractor shall perform with its own organization contract work amounting to not less than 30 percent (or a greater percentage if specified elsewhere in the contract) of the total original contract price, excluding any specialty items designated by the State. Specialty items may be performed by subcontract and the amount of any such specialty items performed may be deducted from the total original contract price before computing the amount of work required to be performed by the contractor's own organization (23 CFR 635).

a. "Its own organization" shall be construed to include only workers employed and paid directly by the prime contractor and equipment owned or rented by the prime contractor, with or without operators. Such term does not include employees or equipment of a subcontractor, assignee, or agent of the prime contractor.

b. "Specialty Items" shall be construed to be limited to work that requires highly specialized knowledge, abilities, or equipment not ordinarily available in the type of contracting organizations qualified and expected to bid on the contract as a whole and in general are to be limited to minor components of the overall contract.

2. The contract amount upon which the requirements set forth in paragraph 1 of Section VII is computed includes the cost of material and manufactured products which are to be purchased or produced by the contractor under the contract provisions.

3. The contractor shall furnish (a) a competent superintendent or supervisor who is employed by the firm, has full authority to direct performance of the work in accordance with the contract requirements, and is in charge of all construction operations (regardless of who performs the work) and (b) such other of its own organizational resources (supervision, management, and engineering services) as the SHA contracting officer determines is necessary to assure the performance of the contract.

4. No portion of the contract shall be sublet, assigned or otherwise disposed of except with the written consent of the SHA contracting officer, or authorized representative, and such consent when given shall not be construed to relieve the contractor of any responsibility for the fulfillment of the contract. Written consent will be given only after the SHA has assured that each subcontract is evidenced in writing and that it contains all pertinent provisions and requirements of the prime contract.

## VIII. SAFETY: ACCIDENT PREVENTION

1. In the performance of this contract the contractor shall comply with all applicable Federal, State, and local laws governing safety, health, and sanitation (23 CFR 635). The contractor shall provide

all safeguards, safety devices and protective equipment and take any other needed actions as it determines, or as the SHA contracting officer may determine, to be reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract.

2. It is a condition of this contract, and shall be made a condition of each subcontract, which the contractor enters into pursuant to this contract, that the contractor and any subcontractor shall not permit any employee, in performance of the contract, to work in surroundings or under conditions which are unsanitary, hazardous or dangerous to his/her health or safety, as determined under construction safety and health standards (29 CFR 1926) promulgated by the Secretary of Labor, in accordance with Section 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. 333).

3. Pursuant to 29 CFR 1926.3, it is a condition of this contract that the Secretary of Labor or authorized representative thereof, shall have right of entry to any site of contract performance to inspect or investigate the matter of compliance with the construction safety and health standards and to carry out the duties of the Secretary under Section 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. 333).

## IX. FALSE STATEMENTS CONCERNING HIGHWAY PROJECTS

In order to assure high quality and durable construction in conformity with approved plans and specifications and a high degree of reliability on statements and representations made by engineers, contractors, suppliers, and workers on Federal-aid highway projects, it is essential that all persons concerned with the project perform their functions as carefully, thoroughly, and honestly as possible. Willful falsification, distortion, or misrepresentation with respect to any facts related to the project is a violation of Federal law. To prevent any misunderstanding regarding the seriousness of these and similar acts, the following notice shall be posted on each Federal-aid highway project (23 CFR 635) in one or more places where it is readily available to all persons concerned with the project:

## NOTICE TO ALL PERSONNEL ENGAGED ON FEDERAL-AID HIGHWAY PROJECTS

18 U.S.C. 1020 reads as follows:

"Whoever, being an officer, agent, or employee of the United States, or of any State or Territory, or whoever, whether a person, association, firm, or corporation, knowingly makes any false statement, false representation, or false report as to the character, quality, quantity, or cost of the material used or to be used, or the quantity or quality of the work performed or to be performed, or the cost thereof in connection with the submission of plans, maps, specifications, contracts, or costs of construction on any highway or related project submitted for approval to the Secretary of Transportation; or

Whoever knowingly makes any false statement, false representation, false report or false claim with respect to the character, quality, quantity, or cost of any work performed or to be performed, or materials furnished or to be furnished, in connection with the construction of any highway or related project approved by the Secretary of Transportation; or

Whoever knowingly makes any false statement or false representation as to material fact in any statement, certificate, or report submitted pursuant to provisions of the Federal-aid Roads Act approved July 1, 1916, (39 Stat. 355), as amended and supple-

**Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Primary Covered Transactions**

1. The prospective primary participant certifies to the best of its knowledge and belief, that it and its principals:

   a. Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

   b. Have not within a 3-year period preceding this proposal been convicted of or had a civil judgement rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

   c. Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph 1b of this certification; and

   d. Have not within a 3-year period preceding this application/proposal had one or more public transactions (Federal, State or local) terminated for cause or default.

2. Where the prospective primary participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

⋆ ⋆ ⋆ ⋆ ⋆

2. **Instructions for Certification - Lower Tier Covered Transactions:**

   (Applicable to all subcontracts, purchase orders and other lower tier transactions of $25,000 or more - 49 CFR 29)

   a. By signing and submitting this proposal, the prospective lower tier is providing the certification set out below.

   b. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department, or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

   c. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous by reason of changed circumstances.

   d. The terms "covered transaction," "debarred," "suspended," "ineligible," "primary covered transaction," "participant," "person," "principal," "proposal," and "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to which this proposal is submitted for assistance in obtaining a copy of those regulations.

   e. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

   f. The prospective lower tier participant further agrees by submitting this proposal that it will include this clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion-Lower Tier Covered Transaction," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

   g. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

   h. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

   i. Except for transactions authorized under paragraph e of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

⋆ ⋆ ⋆ ⋆ ⋆

**Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions:**

1. The prospective lower tier participant certifies, by submission of this proposal, that neither it nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency.

2. Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

⋆ ⋆ ⋆ ⋆ ⋆

**XII. CERTIFICATION REGARDING USE OF CONTRACT FUNDS FOR LOBBYING**

   (Applicable to all Federal-aid construction contracts and to all related subcontracts which exceed $100,000 - 49 CFR 20)

1. The prospective participant certifies, by signing and submitting this bid or proposal, to the best of his or her knowledge and belief, that:

## ATTACHMENT A - EMPLOYMENT PREFERENCE FOR APPALACHIAN CONTRACTS
### (Applicable to Appalachian contracts only.)

1. During the performance of this contract, the contractor undertaking to do work which is, or reasonably may be, done as on-site work, shall give preference to qualified persons who regularly reside in the labor area as designated by the DOL wherein the contract work is situated, or the subregion, or the Appalachian counties of the State wherein the contract work is situated, except:

    a. To the extent that qualified persons regularly residing in the area are not available.

    b. For the reasonable needs of the contractor to employ supervisory or specially experienced personnel necessary to assure an efficient execution of the contract work.

    c. For the obligation of the contractor to offer employment to present or former employees as the result of a lawful collective bargaining contract, provided that the number of nonresident persons employed under this subparagraph 1c shall not exceed 20 percent of the total number of employees employed by the contractor on the contract work, except as provided in subparagraph 4 below.

2. The contractor shall place a job order with the State Employment Service indicating (a) the classifications of the laborers, mechanics and other employees required to perform the contract work, (b) the number of employees required in each classification,

(c) the date on which he estimates such employees will be required, and (d) any other pertinent information required by the State Employment Service to complete the job order form. The job order may be placed with the State Employment Service in writing or by telephone. If during the course of the contract work, the information submitted by the contractor in the original job order is substantially modified, he shall promptly notify the State Employment Service.

3. The contractor shall give full consideration to all qualified job applicants referred to him by the State Employment Service. The contractor is not required to grant employment to any job applicants who, in his opinion, are not qualified to perform the classification of work required.

4. If, within 1 week following the placing of a job order by the contractor with the State Employment Service, the State Employment Service is unable to refer any qualified job applicants to the contractor, or less than the number requested, the State Employment Service will forward a certificate to the contractor indicating the unavailability of applicants. Such certificate shall be made a part of the contractor's permanent project records. Upon receipt of this certificate, the contractor may employ persons who do not normally reside in the labor area to fill positions covered by the certificate, notwithstanding the provisions of subparagraph 1c above.

5. The contractor shall include the provisions of Sections 1 through 4 of this Attachment A in every subcontract for work which is, or reasonably may be, done as on-site work.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE: March 11, 2002                          Special Provision No. 02-0097

EFFECTIVE DATE: July 1, 2002

SUBJECT:    Required Contract Provision for all Federal Aid Projects
            for Equal Employment Opportunity

Alabama Standard Specifications, 2002 Edition, are hereby amended to include the following:

In compliance with Executive Order 11246, the following Standard Federal Equal Opportunity Construction Contract Specifications shall apply:

**General Requirements**
(41 CPR 60-4.3)

1.  As used in these specifications:
    a.  "Covered area" means the geographical area described in the solicitation from which this contract resulted;
    b.  "Director" means Director, Office of Federal Contract Compliance Programs, United States Department of Labor, or any person to whom the Director delegates authority;
    c.  "Employer identification number" means the Federal Social Security number used on the Employer's Quarterly Federal Tax Return. U.S. Treasury Department Form 941;
    d.  "Minority" includes:
        (i)   Black (all persons having origins in any of the Black African racial groups not of Hispanic origin);
        (ii)  Hispanic (all persons of Mexican, Puerto Rican, Cuban, Central or South American or other Spanish Culture or origin, regardless of race);
        (iii) Asian and Pacific Islander (all persons having origins in any of the original peoples of the Far East, Southeast Asia, the Indian Subcontinent or the Pacific islands); and
        (iv)  American Indian or Alaskan Native (all persons having origins in any of the original peoples of North America and maintaining identifiable tribal affiliations through membership and participation or community identification).
2.  Whenever the Contractor, or any Subcontractor at any tier, subcontracts a portion of the work involving any construction trade, it shall physically include in each subcontract, in excess of $10,000, the provisions of these specifications and the Notice which contains the applicable goals for minority and female participation and which is set forth in the solicitations from which this contract resulted.
3.  If the Contractor is participating (pursuant to 41 CFR 60-4.5) in a Hometown Plan approved by the U.S. Department of Labor in the covered area either individually or through an association, its affirmative action obligations on all work in the Plan area (including goals and timetables) shall be in accordance with that Plan for those trades which have unions participating in the Plan. Contractors must be able to demonstrate their participation in and compliance with the provisions of any such Hometown Plan. Each Contractor or Subcontractor participating in an approved Plan is individually required to comply with its obligations under the EEO clause, and to make a good faith effort to achieve each goal under the Plan in each trade in which it has employees. The overall good faith performance by other Contractors or Subcontractors toward a goal in an approved Plan does not excuse any covered Contractor's or Subcontractor's failure to take good faith efforts to achieve the Plan goals and timetables.
4.  The Contractor shall implement the specific affirmative action standards provided in paragraphs 7a through 7p of these specifications. The goals set forth in the solicitation from which this contract resulted are expressed as percentages of the total hours of employment and training of minority and female utilization the Contractor should reasonably be able to achieve in each construction trade in which it has employees in the covered area. Covered construction contractors performing

3                                 Special Provision No. <u>02-0097</u>

   h.    Disseminate the Contractor's EEO policy externally by including it in any advertising in the news media, specifically including minority and female news media, and providing written notification to and discussing the Contractor's EEO policy with other Contractors and Subcontractors with whom the Contractor does or anticipates doing business.

   i.    Direct its recruitment efforts, both oral and written, to minority, female and community organizations, to schools with minority and female students and to minority and female recruitment and training organizations serving the Contractor's recruitment area and employment needs.  Not later than one month prior to the date for the acceptance of applications for apprenticeship or other training by any recruitment source, the Contractor shall send written notification to organizations such as the above, describing the openings, screening procedures and tests to be used in the selection process.

   j.    Encourage present minority and female employees to recruit other minority persons and women and, where reasonable, provide after school, summer and vacation employment to minority and female youth both on the site and in other areas of a Contractor's workforce.

   k.    Validate all tests and other selection requirements where there is an obligation to do so under 41 CPR Part 60-3.

   l.    Conduct at least annually an inventory and evaluation at least of all minority and female personnel for promotional opportunities and encourage these employees to seek or to prepare for, through appropriate training, etc., such opportunities.

   m.    Ensure that seniority practices, job classifications, work assignments and other personnel practices do not have a discriminatory effect by continually monitoring all personnel and employment-related activities to ensure that the EEO policy and the Contractor's obligations under these specifications are being carried out.

   n.    Ensure that all facilities and company activities are nonsegregated, except that separate or single-user toilet and necessary changing facilities shall be provided to assure privacy between the sexes.

   o.    Document and maintain a record of all solicitations of offers for subcontracts from minority and female construction contractors and suppliers, including circulation of solicitations to minority and female contractor associations and other business associations.

   p.    Conduct a review, at least annually, of all supervisors, adherence to and performance under the Contractor's EEO policies and affirmative action obligations.

8.    Contractors are encouraged to participate in voluntary associations that assist in fulfilling one or more of their affirmative action obligations (7a through 7p).  The efforts of a contractor association, joint contractor-union, contractor-community or other similar group of which the Contractor is a member and participant, may be asserted as fulfilling any one or more of its obligations under 7a through 7p of these Specifications provided that the Contractor actively participates in the group, makes every effort to assure that the group has a positive impact on the employment of minorities and women in the industry, ensures that the concrete benefits of the program are reflected in the Contractor's minority and female workforce participation, makes a good faith effort to meet its individual goals and timetables, and can provide access to documentation which demonstrates the effectiveness of actions taken on behalf of the Contractor.  The obligation to comply, however, is the Contractor's and failure of such a group to fulfill an obligation shall not be a defense for the Contractor's noncompliance.

9.    A single goal for minorities and a separate single goal for women have been established.  The Contractor, however, is required to provide equal employment opportunity and to take affirmative action for all minority groups, both male and female, and all women, both minority and non-minority. Consequently, the Contractor may be in violation of the Executive Order if a particular group is employed in a substantially disparate manner (for example, even though the Contractor has achieved its goals for women generally, the Contract may be in violation of the Executive Order if a specific minority group of women is under-utilized).

10.    The Contractor shall not use the goals and timetables or affirmative action standards to discriminate against any person because of race, color, religion, sex or national origin.

11.    The Contractor shall not enter into any Subcontract with any person or firm debarred from Government contracts pursuant to Executive Order 11246.

12.    The Contractor shall carry out such sanctions and penalties for violation of these specifications and of the Equal Opportunity Clause, including suspension, termination and cancellation of existing subcontracts as may be imposed or ordered pursuant to Executive Order 11246, as amended, and its implementing regulations, by the Office of the Federal Contract Compliance Programs.  Any

5                              Special Provision No. 02-0097

(41 CPR 60-4.2)

(d)    The following notice shall be included in, and shall be a part of, all solicitations for offers and bids on all Federal and federally assisted construction contracts or subcontracts in excess of $10,000 to be performed in geographical areas designated by the Director pursuant to §60-4.6 of this part (see 41 CPR-4.2 (a)):

Notice of Requirement for Affirmative Action to Ensure Equal Employment Opportunity (Executive Order 11246)

1.    The Offerer's or Bidder's attention is called to the "Equal opportunity Clause" and the "Standard Federal Equal Employment Specifications" set forth herein.

2.    The goals and timetables for minority and female participation, expressed in percentage terms for the Contractor's aggregate workforce in each trade on all construction work in the covered area, are as shown on Attachment No. 1.
       These goals are applicable to all the Contractor's construction work (whether or not it is Federal or federally assisted) performed in the covered area. If the contractor performs construction work in a geographical area located outside of the covered area, it shall apply the goals established for such geographical area where the work is actually performed. With regard to this second area, the contractor also is subject to the goals for both its federally-involved and nonfederally involved construction.
       The Contractor's compliance with the Executive Order and the regulations in 41 CFR Part 60-4 shall be based on its implementation of the Equal Employment Clause, specific affirmative action obligations required by the specifications set forth in 41 CFR 60-4.3(a), and its efforts to meet the goals. The hours of minority and female employment and training must be substantially uniform throughout the length of the contract, and in each trade, and the contractor shall make a good faith effort to employ minorities and women evenly on each of its projects. The transfer of minority or female employees or trainees from Contractor to Contractor or from project to project for the sole purpose of meeting the Contractor's goals shall be a violation of the contract, the Executive Order and the regulations in 41 CPR Part 60-4. Compliance with the goals will be measured against the total work hours performed.

3.    The Contractor shall provide written notification to the Director of the Office of Federal Contract Compliance Programs within 10 working days of award of any construction subcontract in excess of $10,000 at any tier for construction work under the contract resulting from this solicitation. The notification shall list the name, address and telephone number of the subcontractor; employer identification number of the subcontractor; estimated dollar amount of the subcontract; estimated starting and completion dates of the subcontract; and the geographical area in which the subcontract is to be performed.

4.    As used in this Notice, and in the contract resulting from this solicitation, the "covered area" is that shown on Attachment No. 1.


**Show Cause Notice**
(41 CFR 60-4.8)

If an investigation or compliance review reveals that a construction contractor or subcontractor has violated the Executive Order, any contract clause, specifications or the regulations in this chapter and if administrative enforcement is contemplated, the Director shall issue to the contractor or subcontractor a notice to show cause which shall contain the items specified in (i) - (iv) of 41 CPR 60-2.2 (c)(1) - If the Contractor does not show good cause within 30 days, or, in the alternative, fails to enter an acceptable conciliation agreement which includes where appropriate, make-up goals and timetables, back pay, and seniority relief for affected class members, the compliance agency shall follow the procedure in 41 CFR 60-1.26(b) : Provided that where a conciliation agreement has been violated, no show cause notice is required prior to the initiation of enforcement proceedings.

*STATE OF ALABAMA*
*DEPARTMENT OF TRANSPORTATION*

**DATE:   July 1, 2002**                    **SPECIAL PROVISION NO.  02-0100-6**

**SUBJECT:**   Highway Construction Wage Rates in **BABROUR, BIBB, BULLOCK, BUTLER, CHAMBERS, CHEROKEE, CHILTON, CHOCTAW, CLARKE, CLAY, CLEBURNE, COFFEE, CONECUH, COOSA, COVINGTON, CRENSHAW, CULLMAN, DALLAS, DE KALB, ESCAMBIA, FAYETTE, FRANKLIN, GENEVA, GREENE, HALE, HENRY, JACKSON, LAMAR, LOWNDES, MACON, MARENGO, MARION, MARSHALL, MONROE, PERRY, PICKENS, PIKE, RANDOLPH, SUMTER, TALLADEGA, TALLAPOOSA, WALKER, WASHINGTON, WILCOX & WINSTON** counties

Schedule of minimum wage rates contained in **Wage Determination Decision No. AL020023** dated **June 28, 2002** of the Secretary of Labor is hereby made a part of the Proposal Contract.  Minimum wage rates established under this decision are as follows:

| CRAFT | RATE PER HOUR |
|---|---|
| **CARPENTER** | $    10.94 |
| **CONCRETE FINISHER** | 11.64 |
| **CEMENT MASON** | 10.62 |
| **ELECTRICIAN** | 13.71 |
| **IRONWORKERS:** | |
| **Structural** | 13.98 |
| **Reinforcing** | 11.32 |
| **LABORERS:** | |
| **Asphalt Raker** | 8.20 |
| **Concrete Laborer** | 8.08 |
| **Grade Checker** | 9.62 |
| **Pipelayer** | 8.60 |
| **Powderman/Blaster** | 11.35 |
| **Siderail & Form Setter** | 8.76 |
| **Unskilled** | 7.00 |

**Page 1 of 3**

**SPECIAL PROVISION NO. 02-0100-6**
**COUNTY: Barbour, Bibb, Bullock, Butler, Chambers, Cherokee, Chilton, Choctaw, Clarke, Clay, Cleburne, Coffee, Conecuh, Coosa, Covington, Crenshaw, Cullman, Dallas, DeKalb, Escambia, Fayette, Franklin, Geneva, Greene, Hale, Henry, Jackson, Lamar, Lowndes, Macon, Marengo, Marion, Marshall, Monroe, Perry, Pickens, Pike, Randolph, Sumter, Talladega, Tallapoosa, Walker, Washington, Wilcox & Winston**
**DATE: July 1, 2002**

| CRAFT | | RATE PER HOUR |
|---|---|---|
| **TRUCK DRIVERS:** | | |
| Single Rear Axle | $ | 8.24 |
| Multi Rear Axle | | 9.55 |
| Over 35 Tons | | 8.83 |
| Under 1-1/2 Tons | | 6.96 |

--------------------------------------------------------------------------------
**WELDERS -** Receive rate prescribed for craft performing operation to which welding is Incidental.
--------------------------------------------------------------------------------

## NOTICE TO CONTRACTORS

The attention of each bidder is invited to the fact that the wage rates shown on this proposal form are **MINIMUM** rates. Each bidder should make the necessary investigation to determine the prevailing wage rates which, for certain crafts, may be higher than the minimum rates established for this project. Under no condition shall the bidder pay **LESS** than the minimum rates shown on the proposal, but for certain crafts, it may be necessary for him to pay **MORE** in order to secure the labor required.

Unlisted classifications needed for work not included within the scope of the classification listed may be added after award only as provided in the labor standards contract clauses (29 CFR 5.5(a)(1)(v)).

The bidder should investigate and abide by any orders issued by the Wage Adjustment Board or any other authorized Federal Agency having jurisdiction over wage rates.

**Page 3 of 3**

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE: January 28, 2002                    Special Provision No. <u>02-0102</u>

EFFECTIVE DATE:   July 1, 2002

SUBJECT:  Corps of Engineers Nationwide Construction Permit.

Alabama Standard Specifications, 2002 Edition, are hereby amended as follows:

## SECTION 107
## LEGAL RELATIONS AND RESPONSIBILITY TO PUBLIC

107.09 Construction Over or Adjacent to Waters of the United States.

*This Article (107.09) shall be amended to include the following:*

(c) SPECIAL CONDITIONS.

The required work is permitted under a US Army Corps of Engineers "Nationwide Permit". The general requirements of this permit are given in 33 CFR Part 330 "Nationwide Permit Program". The Contractor shall abide by all of the requirements given in this permit.

A copy of the permit requirements may be obtained during the project advertising period. The copy may be obtained from the ALDOT Office Engineer. A copy will be furnished to the successful bidder.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE:  January 30, 2002                           Special Provision No. <u>02-0105</u>

EFFECTIVE DATE:  July 1, 2002

SUBJECT: Stormwater Permit for County Projects.

Alabama Standard Specifications, 2002 Edition, are hereby amended as follows:

# SECTION 107
# LEGAL RELATIONS AND RESPONSIBILITY TO PUBLIC

*This Section (107) shall be amended by the addition of Article 107.24 as follows:*

**107.24 Stormwater Permit Requirements.**
The following permit requirements cover work within the project right of way and construction easements. The Contractor shall be responsible for obtaining permits on all material pits, waste areas, haul roads and other off-site areas selected by the Contractor to construct the project.

An Alabama Department of Environmental Management (ADEM) National Pollutant Discharge Elimination System (NPDES) General Permit (ADEM-NPDES-GP) is required for this project concerning stormwater runoff from construction, excavation, land clearing, other land disturbance activities, and associated areas. The County Commission will be the PERMITTEE of record with ADEM for the Permit. The Contractor shall be a CO-PERMITTEE with the County Commission for the Permit and shall comply with all requirements of the Permit.

The Contractor (CO-PERMITTEE) shall fully implement and maintain appropriate structural and nonstructural Best Management Practices (BMPs) to prevent and minimize nonpoint source pollutants in stormwater discharges. The Contractor and the County will jointly perform regular inspections and the County will perform sampling to ensure that BMPs are in place and that pollutant concentrations are within acceptable levels.

The following BMPs required by the ADEM shall be followed, as appropriate, in order for any work performed under an ADEM-NPDES-GP to be valid.

(a) GENERAL.
The Contractor shall implement appropriate BMPs for prevention and control of nonpoint sources of pollutants (NPS), e.g., sediment, oil & grease, chemicals, etc., during project construction and subsequent operation (ADEM Administrative Code, Chapters 6-9 and Appendices A & B, and the "Alabama Nonpoint Source Management Program, 1989").

Upon request, the State Office Engineer will furnish a copy of these regulations to the Contractor during the advertising period, and a copy will be furnished to the successful bidder.

The Contractor shall abide by all requirements of these regulations.

Immediately after completion of the project, the Contractor shall implement measures to ensure permanent revegetation or cover of all disturbed areas.

(b) SPILL PREVENTION CONTROL AND COUNTER MEASURES.
The Contractor shall implement an ADEM accepted Spill Prevention Control and Counter Measures (SPCC) Plan for all fuel or chemical storage tanks or facilities. The Contractor shall maintain on-site, or have readily available, sufficient oil and grease absorbing material and flotation booms to contain and clean up fuel or chemical spills and leaks.

3                              Special Provision No. <u>02-0105</u>

(n) DREDGED MATERIALS.
    Dredged material shall not be sidecast, or otherwise placed, in adjacent waters or wetlands.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE: May 20, 2002                    Special Provision No. 02-0106(2)

EFFECTIVE DATE: July 1, 2002

SUBJECT:    Disadvantaged Business Enterprise (DBE) Contract Obligation.

Alabama Standard Specifications, 2002 Edition, shall be amended by the inclusion of the following:

This contract contains a specific goal for the participation of certified DBE's in this project.

The percentage of the total amount of the contract that is required for DBE participation is given in the proposal.

The Department maintains a current listing of certified DBE contractors by categories of work. The Department's certification extends only to the requirements of 49 CFR 26 with regard to business size, disadvantaged status, and ownership and control of business. The certification does not attest in any way to the capabilities or capacity of any business to perform satisfactorily.

DBE's who are not on the current certification list must seek approval prior to tendering an offer on any project.

This contract will be awarded to the lowest responsible bidder. The apparent low bidder will be notified by the Department and, within ten calendar days, must submit in writing on the form provided by the Department, the name and address of the DBE firm or firms, the description of the work to be subcontracted, the dollar amount of the work, a written commitment from the bidder to use the DBE, and a written confirmation from the DBE that it is participating in the contract as provided in the commitment.

In the event the apparent low bidder cannot meet any or all of the DBE goal, the bidder must demonstrate to the Department's satisfaction that bona fide good faith efforts to do so were made.

The Contractor shall furnish the project engineer an ALDOT FORM DBE-10 for each estimate period. The Contractor shall provide the required data for each DBE active on the project during the estimate period. If no DBE was active during the time period, such indication should be made on the form. Form DBE-10 shall be submitted on all Federal aid projects regardless of whether or not the contract contains a specific DBE goal. This form shall be submitted within sixty calendar days of the close of the estimate period for which it applies. Failure to furnish the FORM DBE-10 in a timely manner may result in the withholding of further monthly estimates until the delinquent information has been submitted.

The following actions will be considered in evaluating good faith efforts:

Soliciting through all reasonable and available means (e.g., attendance at pre-bid meetings, advertising, and/or written notices) the interest of all certified DBE's who have the capability to perform the work of the contract. The bidder must solicit this interest within sufficient time to allow the DBE's to respond to the solicitation. The bidder must determine with certainty if the DBE's are interested by taking appropriate steps to follow up initial solicitations.

Selecting portions of the work to be performed by DBE's in order to increase the likelihood that the DBE goals will be achieved. This includes, where appropriate, breaking out contract work items in to economically feasible units to facilitate DBE participation, even when the prime contractor might otherwise prefer to perform these work items with its own forces.

Providing interested DBE's with adequate information about the plans, specifications, and requirements of the contract in a timely manner to assist them in responding to a solicitation.

Negotiating in good faith with interested DBE's. It is the bidder's responsibility to make a portion of the work available to DBE subcontractors and suppliers and to select those portions of the work or material needs consistent with the available DBE subcontractors and suppliers, so as to facilitate DBE participation. Evidence of such negotiation includes the names, addresses, and telephone numbers of DBE's that were considered; a description of the information provided regarding the plans and

3          Special Provision No. <u>02-0106(2)</u>

(b) When a DBE performs as a participant in a joint venture, count a portion of the total dollar value of the contract equal to the distinct, clearly defined portion of the work of the contract that the DBE performs with its own forces toward DBE goals.

(c) Count expenditures to a DBE contractor toward DBE goals only if the DBE is performing a commercially useful function on that contract.

(1) A DBE performs a commercially useful function when it is responsible for execution of the work of the contract and is carrying out its responsibilities by actually performing, managing, and supervising the work involved. To perform a commercially useful function, the DBE must also be responsible, with respect to materials and supplies used on the contract, for negotiating price, determining quality and quantity, ordering the material, and installing (where applicable) and paying for the material itself. To determine whether a DBE is performing a commercially useful function, you must evaluate the amount of work subcontracted, industry practices, whether the amount the firm is to be paid under the contract is commensurate with the work it is actually performing and the DBE credit claimed for its performance of the work, and other relevant factors.

(2) A DBE does not perform a commercially useful function if its role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of DBE participation. In determining whether a DBE is such an extra participant, you must examine similar transactions, particularly those in which DBE's do not participate.

(3) If a DBE does not perform or exercise responsibility for at least 30 percent of the total cost of its contract with its own work force, or the DBE subcontracts a greater portion of the work of a contract than would be expected on the basis of normal industry practice for the type of work involved, you must presume that it is not performing a commercially useful function.

(4) When a DBE is presumed not to be performing a commercially useful function as provided in paragraph (c)(3) of this section, the DBE will be given the opportunity to evidence to rebut this presumption. You may determine that the firm is performing a commercially useful function given the type of work involved and normal industry practices.

(5) ALDOT's decisions on commercially useful function matters are subject to review by the concerned operating administration, but are not administratively appealable to USDOT.

(d) Use the following factors in determining whether a DBE trucking company is performing a commercially useful function:

(1) The DBE must be responsible for the management and supervision of the entire trucking operation for which it is responsible on a particular contract, and there cannot be a contrived arrangement for the purpose of meeting DBE goals.

(2) The DBE must itself own and operate at least one fully licensed, insured, and operational truck used on the contract.

(3) The DBE receives credit for the total value of the transportation services it provides on the contract using trucks it owns, insures, and operates using drivers it employs.

(4) The DBE may lease trucks from another DBE firm, including an owner-operator who is certified as a DBE. The DBE who leases trucks from another DBE receives credit for the total value of the transportation services the lessee DBE provides on the contract.

(5) The DBE may also lease trucks from a non-DBE firm, including an owner-operator. The DBE who leases trucks from a non-DBE is entitled to credit only for the fee or commission it receives as a result of the lease arrangement. The DBE does not receive credit for the total value of the transportation services provided by the lessee, since these services are not provided by a DBE.

(6) For purposes of this paragraph (d), a lease must indicate that the DBE has exclusive use of and control over the truck. This does not preclude the leased truck from working for others during the term of the lease with the consent of the DBE, so long as the lease gives the DBE absolute priority for use of the leased truck. Leased trucks must display the name and identification number of the DBE.

(e) Count expenditures with DBE's for materials or supplies toward DBE goals as provided in the following:

(1) (i) If the materials or supplies are obtained from a DBE manufacturer, count 100 percent of the cost of the materials or supplies toward DBE goals.

5                  Special Provision No. <u>02-0106(2)</u>

An exception to the above is that an open and flagrant violation will result in the omission of the warning letter, and the Contractor will be summarily removed from the bid list for six months and/or the DBE from the certified DBE list for six months.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE:  January 30, 2002                          Special Provision No. <u>02-0108</u>

EFFECTIVE DATE:  July 1, 2002

SUBJECT:  Computer Diskette Bidding.

Alabama Standard Specifications, 2002 Edition, are hereby amended as follows:

# SECTION 102
# PROPOSAL REQUIREMENTS AND CONDITIONS

**102.06 Preparation of Proposal.**

(b) DETAILS.

*This Subarticle (102.06(b)) shall be amended by the replacing the first paragraph with the following:*

All bids shall be submitted using the diskette bid system provided by the Department. Bids submitted using any other form, format, or means shall be rejected. On "lump sum" items an entry shall be shown in the amount bid column. If a bidder wishes to bid an item "free", then he shall enter 0 (zero) in the dollar column and 00 (double zero) in the cents column in both the unit price column and amount bid column.

(e) COMPUTER DISKETTE BIDDING.

*This Subarticle (102.06(e)) shall be replaced by the following:*

(e) COMPUTER DISKETTE BIDDING.

When ordering bid proposal forms, the Contractor will receive computer diskettes for preparing the bid. Two diskettes will be required to prepare each bid. One diskette is the Master Program Diskette, which contains all program modules necessary for executing the Diskette Bid System. This diskette can be reused for each letting. The other diskette, purchased each letting, is the Proposal Data Diskette and contains information pertinent to an individual project. This diskette is purchased for the applicable project each letting. The program shall be used to prepare the bid and print official bid item sheets for submittal. The program will operate on a Pentium class processor, using Microsoft Windows 95, Windows NT 4.0 or later operating system, with a minimum of 32 MB of Random Access Memory (RAM) for Windows NT, and 16 MB of RAM for the other Microsoft Operating Systems.

The only entries permitted into the computer program by the bidder will be the unit or lump sum prices for items that must be bid. The program will perform all extensions of the unit or lump sum prices, calculate the total bid, and print a complete set of bid item sheets including the total bid price.

Bid item sheets generated from the computer program shall be printed on 8.5 X 11 inch {216 mm x 279 mm} paper using 10 characters per 1 inch {25.4 mm} type in accordance with instructions furnished on the diskette.

This set of bid item sheets, generated from the program provided by the Department, along with a complete proposal package, will constitute the official bid. The computer generated bid item sheets shall be signed and dated in the title block provided. The computer generated bid item sheets and proposal shall be signed by the same individual and delivered to the Department in accordance with Article 102.10, Delivery of Proposals.

Only computer generated bid item sheets printed from the computer program diskettes, furnished by the Department, will be accepted for the official bid. Failure to use and submit diskette generated bid item sheets shall result in the bid being rejected. Care shall be taken to make sure that each computer generated bid item sheet and signature sheet has the same proposal control number

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE: August 1, 2003                    Special Provision No. <u>02-0125(2)</u>

EFFECTIVE DATE: September 1, 2003

SUBJECT:    Payments to Subcontractors.

Alabama Standard Specifications, 2002 Edition, are hereby amended as follows :

# SECTION 109
# MEASUREMENT AND PAYMENT

109.08 Payments to Subcontractors.
*This Article (109.08) shall be replaced by the following:*

109.08 Payments to Subcontractors.
    The Prime Contractor shall make payment to all subcontractors, for the portion of the work satisfactorily completed by the subcontractors, within 7 calendar days of the Contractor's receipt of a partial payment from the ALDOT.
    When the Subcontractor's work has been satisfactorily completed, the Prime Contractor shall, within 7 calendar days of receipt of partial payment from ALDOT, pay the Subcontractor all monies due including monies withheld as retainage.
    The Prime Contractor shall submit to the project engineer a notarized certification of payment signed by an authorized company representative, for each estimate period. This certification shall read "<u>Company's Name</u> paid all subcontractors active on the project for Estimate Period No. _____ within 7 calendar days of the receipt of the partial payment covering said estimate period." The certification shall be submitted within sixty calendar days of the close of the estimate period for which it applies. Failure to furnish the certification in a timely manner may result in the withholding of further monthly payments or other punitive action until the delinquent certifications have been submitted. Should an ALDOT audit reveal that the Contractor did not make payments as stated in the certification, ALDOT will take punitive action against the Contractor. This action may include disqualification from bidding for a minimum period of six months.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE:  October 8, 2002                    Special Provision No. <u>02-0127(2)</u>

EFFECTIVE DATE:  December 1, 2002

SUBJECT:  Proposal Guaranties and Execution of Contract.

Alabama Standard Specifications, 2002 Edition, shall be amended as follows:

# SECTION 103
# AWARD AND EXECUTION OF CONTRACT

103.04 Return of Proposal Guaranties.

*This Article (Article 103.04) shall be replaced by the following:*

**103.04 Return of Proposal Guaranties.**
All proposal guaranties, except those of the 3 lowest bona fide bidders, will be returned without undue delay after proposals have been checked, tabulated, and the relation to the proposals established. The proposal guaranty of the 3 lowest bona fide bidders will be returned as soon as the contract bonds and the contract of the successful bidder have been properly executed and approved. When the award is deferred for a period of time longer than 15 days after the opening of the proposals, all proposal guaranties except those of the potentially successful bidders will be returned. Should no award be made, all guaranties will be returned. Should the successful bidder agree in writing to a stipulated extension in the time limit for award, the Director may, at his discretion, permit the successful bidder to substitute a satisfactory bidder's bond if a cashier's check was submitted with his proposal as a proposal guarantee. The Director reserves the right to return all proposal guaranties by registered mail and his responsibility shall end upon the mailing thereof.

103.08 Failure to Execute Contract.

*The second paragraph of this Subarticle (Subarticle 103.08) shall be replaced by the following:*

When the successful bidder or bidders fail to execute a contract, and the contract is awarded to the next lowest bidder, the original low bidder will be prohibited from participating in any manner in the original contract, and will be prohibited from participating in any manner in any portion of that contract that may be removed and put into other contracts. These prohibitions shall be:
- Work will not be allowed as a subcontractor or in any other capacity.
- Bidding will not be allowed on the original contract if it is readvertised for letting.
- Bidding will not be allowed on any subsequent contract which contains any portion of the original contract.
These restrictions shall apply to any other name under which the same person, individual, partnership, company, firm, corporation, association, cooperative, or other legal entity may be operating in which the principal owners are involved.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE:  July 15, 2003                                    Special Provision No. <u>02-0138(4)</u>

EFFECTIVE DATE:  September 1, 2003

SUBJECT:  Prosecution of Work.

Alabama Standard Specifications, 2002 Edition, shall be amended as follows:

# SECTION 108
# PROSECUTION AND PROGRESS

108.04 Prosecution of Work.

*This Article (Article 108.04) shall be replaced by the following:*

108.04 Prosecution of Work.

(a) PRECONSTRUCTION CONFERENCE.

The Contractor and Subcontractors shall attend a preconstruction conference scheduled by the Engineer and shall be prepared to describe how the work will be prosecuted.

The preconstruction conference will be held after the award of the contract and prior to the commencement of any field work on any contract pay item.

(b) NOTICE OF INTENT.

The Contractor shall give the Engineer definite notice of his intention to start work at least 72 hours in advance of beginning work and at least 24 hours in advance of beginning particular features of construction, such as driving piles, placing concrete, et cetera. Should prosecution of the work be discontinued by the Contractor with the consent of the Engineer, the Contractor shall give the Engineer at least 48 hours notice in writing before resuming operations.

(c) GENERAL.

The Contractor shall prosecute the work continuously and diligently in the order and manner set out in his schedule or prescribed by the Engineer. He shall provide sufficient satisfactory materials, labor, and equipment to guarantee the completion of the project in accordance with the plans and specifications within the time specified in the contract.

Should the Contractor fail to maintain a satisfactory rate of progress, the Engineer will require that additional forces and equipment be placed on the work to bring the project up to schedule and maintain it at that level. Failure to maintain the quality and progress of the work shall be cause for the Engineer to withhold all estimates which are or may become due, until satisfactory quality and progress are maintained; or the contract may be annulled as provided in Article 108.12.

(d) DISQUALIFICATION FOR UNSATISFACTORY PROGRESS.

Should the Contractor fail to maintain a satisfactory rate of progress in performance of the work, prior to expiration of the contract, the following regulation shall apply:

After preparation of the Contractor's monthly estimate, the Department will review the progress of the work. The dollar amount of the work performed will be the total dollar amount that has been paid minus the dollar amount of partial payments for stored materials. The percentage of work performed will be based on the dollar amount of work performed and the total contract amount. This will be compared to the percentage of contract time elapsed. If the percentage of the work performed, as compared to the percent of contract time elapsed, is behind by more than 25 percentage points, a warning notice of possible disqualification will be sent to the Contractor by certified mail, return receipt requested (appropriate credit will be allowed for any extension previously approved in

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE: September 22, 2003                    Special Provision No. 02-0143(2)

EFFECTIVE DATE: November 1, 2003

SUBJECT: Clearing and Grubbing.

Alabama Standard Specifications, 2002 Edition, are hereby amended by the revision of SECTION 201 as follows:

# SECTION 201
# CLEARING AND GRUBBING

**201.01 Description.**

*The third paragraph of this Article (201.01) shall be changed to the following:*

The work of clearing under this Section shall consist of the clearing of the roadside by removal of timber and debris unless shown otherwise on the plans.

**201.03 Construction Requirements.**

(d) ITEM 201-C, CLEARING.

1. GENERAL

*This Item (201.03(d)1.) shall be changed by the deletion of the last sentence in the last paragraph so that the last paragraph is as follows:*

Areas that are required to be cleared by chipping of the timber and spreading of the chips will be shown on the plans.

3. CLEARING WITH CHIPPING OF TIMBER.

*The first sentence of the first paragraph of this Item (201.03(d)3.) shall be changed to the following:*

When indicated on the plans, the Contractor shall remove trees and bushes by chipping, with stumps chipped to a depth of 1 foot {300 mm} below ground line.

**201.05 Basis of Payment.**

(a) UNIT PRICE COVERAGE.

*The last paragraph of Subarticle (201.05(a)) shall be changed to the following:*

For Item 201-C, accepted clearing will be paid for at the contract price bid, measured as noted above, and such payment shall be full compensation for cutting, removal of debris, chipping and spreading of chips (when required on the plans), bushhogging, repairing of damage to the existing ground surface (including blading, topsoil, seeding, etc.), and for furnishing all materials, equipment, tools, labor and incidentals necessary to complete and maintain the work item until acceptance of the project.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE:  February 21, 2003                Special Provision No. <u>02-0435</u>

EFFECTIVE DATE:  April 1, 2003

SUBJECT:  Undercutting.

Alabama Standard Specifications, 2002 Edition, are hereby amended as follows:

# SECTION 210
# EXCAVATION AND EMBANKMENT

210.03 Construction Requirements.
    (b) ROADWAY EXCAVATION.
        4. UNDERCUTTING.

*This Item (210.03(b)4.) shall be deleted as written and the following substituted in lieu thereof:*

        4. UNDERCUTTING.
          a. Soil.
            Unless noted otherwise on the Plans, cuts in soil shall be undercut 1 foot {300 mm} where improved roadbed is required. Undercut areas shall be further undercut if the Engineer determines that this is necessary for the removal of soft or yielding areas. The areas of increased undercutting shall be shaped to drain, backfilled with a suitable material and uniformly compacted to the density specified for embankment.

            The length of a section of undercutting shall be a minimum of 25 feet {7.5 m}.

            Areas where improved roadbed is not required shall also be undercut if the Engineer determines that this is necessary for the removal of soft or yielding areas. These areas shall also be shaped to drain, backfilled with suitable material and uniformly compacted to the density specified for embankment.

            All depressions in undercut sections shall be cleaned out and provisions shall be made for drainage. The depressions shall be backfilled and compacted with selected materials approved by the Engineer.

            Undercutting will be measured and paid for as Unclassified Excavation.
          b. Rock.
            Cuts in rock shall be undercut 1 foot {300 mm} only where the rock does not extend above the subgrade across the full width of the improved roadbed.

            All depressions in cuts in rock shall be cleaned out and provisions shall be made for drainage. The depressions shall be backfilled with a crushed aggregate base material meeting the requirements of Section 825 or a quarry crusher-run material suitable for the intended purpose. The backfill shall be compacted as directed by the Engineer.

            There will be no direct payment for the material required to fill depressions made in rock cuts where the depressions resulted from the removal of rock.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE:  February 4, 2003

Special Provision No. <u>02-0437</u>

EFFECTIVE DATE:  April 1, 2003

SUBJECT:  Disposal of Materials off the Right of Way.

Alabama Standard Specifications, 2002 Edition, are hereby amended as follows:

# SECTION 206
# REMOVAL OF MISCELLANEOUS EXISTING DRAINAGE AND OTHER FACILITIES

206.04 Disposal of Materials.

(c) DISPOSAL OF MATERIALS OFF THE RIGHT OF WAY.

*This Subarticle (206.04(c)) shall be replaced by the following:*

(c) DISPOSAL OF MATERIALS OFF THE RIGHT OF WAY.

Material and debris removed from the right of way shall be disposed of in a manner acceptable to the Engineer. Indiscriminate dumping of these materials on abutting property with or without the owners consent will not be considered satisfactory disposal. The Contractor must comply with all local, State and Federal laws and ordinances pertaining to the type material being disposed of and secure and submit written permission from the property owner for any disposal area. In addition he shall include in the disposal plan an acceptable plan for treatment of the area so as not to present an unsightly appearance, create a public nuisance or incur future maintenance problems for the Department.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE:  July 17, 2003                                          Special Provision No. <u>02-0553</u>

EFFECTIVE DATE:  January 1, 2004

SUBJECT:   Density Requirements for Compaction.

   Alabama Standard Specifications, 2002 Edition, shall be amended by replacing
Section 306 with the following:

# SECTION 306
# DENSITY REQUIREMENTS FOR COMPACTION

**306.01 Description.**
   This Section shall establish the density requirements for earth work, subbase, base, shoulders,
surface, and pavement layers. Compensation for the work required to obtain the densities set forth
hereinafter shall be absorbed in the respective items that material involved is furnished.
   This Section shall also cover the work of furnishing a Portable Moisture-Density Testing Device or
Thin Layer Density Testing Device when a pay item for such is provided by the plans or proposal;
otherwise, the Department, at its option, furnish a testing device or use the alternate methods
provided in Article 306.03. Contractor furnished testing devices are covered by six categories as
follows:
        Pay Item 306-A - The furnishing of an acceptable new or used Nuclear Moisture-Density
Testing Device for use by the Engineer during the life of the project with the title remaining with the
Contractor.
        Pay Item 306-B - The furnishing of an acceptable new Nuclear Moisture-Density Testing Device
for use during the work, the maintenance of the unit during the work and, at the close of the project,
the reconditioning, verification, and, if necessary, recalibration of the unit and the transfer of title of
the unit to the Department.
        Pay Item 306-C - The furnishing of an acceptable new or used Nuclear Thin Layer Density
Testing Device for use during the life of the project with the title remaining with the Contractor.
        Pay Item 306-D - The furnishing of an acceptable new Nuclear Thin Layer Density Testing
Device for use during the work, the maintenance of the unit during the work and, at the close of the
project, the reconditioning, verification, and, if necessary, recalibration of the unit and the transfer of
title of the unit to the Department.
        Pay Item 306-E - The transfer of ownership or disposal of a Department owned Nuclear
Testing Device by the Contractor and the furnishing of an acceptable new Nuclear Moisture-Density
Testing Device for use during the work, the maintenance of the unit during the work and, at the close
of the project, the reconditioning, verification, and, if necessary, recalibration of the unit and the
transfer of title of the unit to the Department. The Department owned device designated for
replacement shall be picked up at the Central Laboratory. The Department will package and have the
device ready for transport. Transfer of all devices will be in accordance with Health Department
regulations and under no circumstances will a nuclear device be transferred to an unlicensed agent or
company.
        Pay Item 306-F - The transfer of ownership or disposal of a Department owned Nuclear
Testing Device by the Contractor and the furnishing of an acceptable new Nuclear Thin Layer Density
Testing Device for use during the work, the maintenance of the unit during the work and, at the close
of the project, the reconditioning, verification, and, if necessary, recalibration of the unit and the
transfer of title of the unit to the Department. The Department-owned device designated for
replacement shall be picked up at the Central Laboratory. The Department will package and have the
device ready for transport. Transfer of all devices will be in accordance with Health Department
regulations and under no circumstances will a nuclear device be transferred to an unlicensed agent or
company.

A control strip shall be constructed to determine a target density and, if applicable, target optimum moisture content. Each control strip, constructed to acceptable density and surface tolerances, shall remain in place and become a section of the completed roadway. Unacceptable control strips shall be corrected or removed and replaced at the Contractor's expense.

Each control strip shall be approximately 500 feet {150 m} long and full width and depth of the layer involved. A control strip shall be constructed at the beginning of work for each layer of subbase or base. A separate control strip shall be constructed for each layer of shoulder subbase or base constructed separately from the traveled way.

The equipment used in the construction of the control strip shall be approved by the Engineer. Compaction of the control strip shall begin immediately after a layer of material has been placed and shall be continuous and uniform over the entire surface. Compaction shall be continued until no discernible increase in density can be obtained by additional compactive effort. The average density of the control strip shall be the target density for the remainder of the course it represents.

A new control strip may be ordered by the Engineer or requested by the Contractor when:

(1) A change in the type or source of material is made.

(2) A change in the thickness of the layer to be placed is made.

(3) There is reason to believe that a control strip density is not representative of the material being placed.

The cost of the construction of the control strip is considered incidental to the testing method and shall be without extra compensation.

(b) DENSITY FOR EMBANKMENT LAYERS.

CONTROL TEST.

AASHTO T 99 Method A, C, or D.

Method A will be used when material has 10 percent or less aggregate retained on the Number 4 {4.75 mm} sieve with the retaining aggregate discarded.

Method C will be used when the material has more than 10 percent aggregate retained on the Number 4 {4.75 mm} sieve, and less than 20 percent retained on the 3/4 inch {19.0 mm} sieve.

Method D will be used when the material has more than 20 percent retained on the 3/4 inch {19.0 mm} sieve.

IN-PLACE DENSITY REQUIREMENTS - 95% for Method A or C, or 98% for Method D.

Embankment layers that are composed predominantly of rock (approximately 70%) shall be rolled until firm, but no in-place density test will be required.

MOISTURE CONTENT.

Strict moisture controls will not be required. However, compaction in a semi-dry condition will not be permitted.

(c) DENSITY FOR MODIFIED AND IMPROVED ROADBED LAYERS.

CONTROL TEST.

AASHTO T 99 Method A, C or D.

Method A will be used when material has 10 percent or less retained on the Number 4 {4.75 mm} sieve with the retained aggregate discarded.

Method C will be used when the material has more than 10 percent aggregate retained on the Number 4 {4.75 mm} sieve and less than 20 percent retained on the 3/4 inch {19.0 mm} sieve.

Method D will be used when the material has more than 20 percent retained on the 3/4 inch {19.0 mm} sieve.

IN-PLACE DENSITY REQUIREMENTS - 100%

MOISTURE CONTENT.

Moisture content at time of in-place density test shall be within ± 2% of the moisture content established during the control density test.

(d) DENSITY FOR ROADBED OR LIME STABILIZATION.

CONTROL TEST.

AASHTO T 99 Method A, C or D for materials without chemical additives.

Method A will be used when the material has 10 percent or less aggregate retained on the Number 4 {4.75 mm} sieve with the retained aggregate discarded.

surface treatment), designated weight {mass}, shall be thoroughly compacted to the satisfaction of the Engineer, but there will be no specified density requirements.

IN-PLACE DENSITY REQUIREMENTS. (See Table II or Table III)

| TABLE II | |
|---|---|
| BINDER LAYER | |
| In-Place Density Test Method | CONTROL TEST METHOD PERCENT REQUIRED IN-PLACE |
| | Standard Method |
| | AASHTO T 209 |
| AASHTO T 166 | 94 ± 2 |
| ALDOT-222 ** | 94 ± 2 |
| ALDOT-350 * | 94 ± 2 |

| TABLE III | |
|---|---|
| WEARING LAYER | |
| In-Place Density Test Method | CONTROL TEST METHOD PERCENT REQUIRED IN-PLACE |
| | Standard Method |
| | AASHTO T 209 |
| AASHTO T 166 | 94 ± 2 |
| ALDOT-350 * | 94 ± 2 |

\*   For layers having a designated rate of placement of from 100 to 300 pounds per square yard {55 to 165 kg/m²}.

\*\* For layers having a designated rate of placement of greater than 300 pounds per square yard {165 kg/m²}.

(h) NUCLEAR TESTING DEVICE.

The operation of the nuclear testing device shall be in conformity with Alabama Department Of Transportation Radiological Operation Manual on Nuclear Moisture and Density Meters.

## 306.04 Method of Measurement.

Measurement for the Item of Nuclear Testing Device will be made on a unit basis for the number of devices ordered and accepted for use.

## 306.05 Basis of Payment.

(a) GENERAL.

No separate payment will be made for the density requirements noted in this Section, such being considered incidental to the requirements of the placement of the material involved.

The actual number of Nuclear Testing Devices, measured as noted above, will be paid for at the contract unit price bid which shall be full compensation for the furnishing of the testing unit with all accessories and services noted in this Section and its use throughout the life of the project. Said unit price shall be for the device's exclusive use on the project throughout the life of the contract or until such time as the Engineer deems there will be no further need of the unit, at which time the device will either be transferred to the Department, if Pay Item 306-B, 306-D, 306-E, or 306-F, or the Contractor will be notified by certified letter to pick up his testing unit. The Contractor will have 30 calendar days from the date of the notification to present a valid license for owning radioactive material from the Alabama State Department of Public Health and claim his property. Failure of the Contractor to present the proper license and claim said property within the 30 days shall be prima facie evidence that he has relinquished all claims to the property and the Department will claim title to the unit.

In addition to the above, for Pay Item 306-E or 306-F, payment shall also be full compensation for transferring ownership or disposal of a Department owned Nuclear Testing Device.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE:  December 17, 2003                    Special Provision No. <u>02-0716</u>

SUBJECT:    Time of Beginning Work, Project Number ACGBBRZ-3400(204),
            ACGBBRZ-3400(205), Henry County.

Alabama Standard Specifications, 2002 Edition, are hereby amended as follows:

# SECTION 108
# PROSECUTION AND PROGRESS

**108.02  Notice To Proceed.**

*This Article (108.02) shall be amended by deleting Subarticle (b) as written and substituting the following in lieu thereof:*

(b) Time of Beginning Work.
        Unless otherwise directed in writing by the Engineer, the Contractor will be expected to begin work within **90 calendar days** after issuance of the notice to proceed.

**108.04 Prosecution of Work.**

(a) NOTICE OF INTENT.

*This Subarticle (108.04(a)) shall be replaced by the following:*

(a) NOTICE OF INTENT.
        The Contractor shall give the Engineer written notice of his intention to start work at least 14 calendar days in advance of beginning work. The Contractor shall also give definite notice at least 24 hours in advance of beginning particular features of construction, such as driving piles, placing concrete, et cetera. Should prosecution of the work be discontinued by the Contractor with the consent of the Engineer, the Contractor shall give the Engineer at least 48 hours notice in writing before resuming operations.

**108.08  Determination Of Contract Time.**

*This Article (108.08) shall be amended by deleting Subarticle (b) and substituting the following in lieu thereof:*

(b) Beginning and End of Contract Time.
        Contract time charges shall begin when the Contractor begins work on a pay item or incidental work that will interfere with traffic, but in no case later than **90 calendar days** after date of issuance of the notice to proceed. Time charges shall end upon satisfactory completion of all pay items in the contract.

# ALABAMA DEPARTMENT OF TRANSPORTATION

DATE: July 1, 2002                                          Special Provision No. **NOTICE-02**

EFFECTIVE DATE:  July 1, 2002

SUBJECT: Notice To Contractors

## NOTICE TO CONTRACTORS

1.  **FEDERAL-AID PARTICIPATING PROJECTS ONLY:**  The Alabama Department of Transportation believes that it is unfair to require the contractor to maintain these projects after their completion waiting for the "Double Check" to be completed.  Therefore, when these projects are ready for final acceptance, but the "Double Check" has not been completed, the contractor will be given a letter notifying him that the State will assume maintenance of same, conditioned on materials and workmanship being found satisfactory.

2.  **FEDERAL-AID CONSTRUCTION CONTRACTORS WHO HAVE CONTRACTS ON THE NATIONAL HIGHWAY SYSTEM:**  Form FHWA-1273 (Rev. 3/94), Section VI, requires contractors to maintain record of total cost of all materials and supplies purchased for and incorporated in the work, quantities of certain items of materials, total hours of employment on the work and total amount earned by persons employed on the work, both by prime contractor and subcontractors.  The contract requires this information to be submitted on Form FHWA-47 upon completion of the contract.  Hereafter, the contractor will be required to furnish this information to the Alabama Department of Transportation not later than the date of final acceptance of the project by the Alabama Department of Transportation. This form, FHWA-47, is required <u>on all Federal-Aid contracts on the National Highway System</u>, **EXCEPT** those which provide solely for the installation of protective devices at railroad grade crossings, those which are constructed on a force account or direct labor basis, highway beautification contracts, and contracts for which the total final construction cost for roadway and bridge is less than $1,000,000.  (23 CFR 635)

3.  **QUARANTINE REGULATIONS:**  The contractor should be aware that, at any given time, there may be a number of quarantines promulgated by the U.S. Department of Agriculture and the Alabama Department of Agriculture and Industries.  These quarantines may restrict the movement of plants, plant products, soil and soil moving equipment into, within or from certain areas of the State of Alabama.

    As noted in Section 107 (107.13) of ALDOT's Standard Specifications, it shall be the contractor's responsibility to contact the local representatives of the Alabama Department of Agriculture and Industries and the U.S. Department of Agriculture in order to advise himself, his agents and/or employees regarding quarantine areas and restrictions affecting his organizations while operating within, from or through such areas.  Further information may be obtained from the offices listed below:

    U.S. Department of Agriculture                     Alabama Department of Agriculture and Industries
    ATTN: State Plant Health Director                 ATTN:  Plant Pest Administrator
    4121 Carmichael Road, Suite 203                   P. O. Box 3336
    Montgomery, AL  36106                             Montgomery, AL  36109-0336
    Telephone: 334-396-9464, Fax: 334-396-5767        Telephone: 334-240-7225, Fax: 334-240-7168

4.  **USE, TEST, APPROVAL & SALE OF TRAFFIC SIGNS, SIGNALS & REGULATORY DEVICES:** Section 32-5A-36(h), Code of Alabama 1975, states, "No manufacturer, jobber, retailer, his agent, or other person shall sell, lease, or offer for sale or hire, any sign, signal or any other traffic regulatory device that does not conform to the provisions of this chapter."

# CONTRACT

THIS AGREEMENT made and entered into this _18th_ day of _February_
Two Thousand _04_, by and between the STATE OF ALABAMA, party of the first part
(hereinafter called the State) and TRIPLE C. CONSTRUCTION OF BANKS, ALABAMA, party
of the second part (hereinafter called Contractor), WITNESSETH:

WHEREAS, the State desires the improvement and construction of a certain road
hereinafter more particularly described and the Contractor desires to furnish and deliver all the
material and to do and perform all the work and labor for the said purpose;

NOW, THEREFORE, in consideration of the premises, the mutual covenants herein
contained and the sum of one dollar ($1.00) by each of the parties to the other in hand paid, the
receipt whereof is hereby acknowledged, the parties hereto agree as follows:

1. The Contractor promises and agrees to furnish and deliver all the material and to do
and perform all the work and labor required to be furnished and delivered, done and performed in
and about the improvement and construction of a road in, HENRY COUNTY Known as
FEDERAL AID PROJECT NUMBERS ACGBBRZ-3400(205) & ACGBBRZ-3400(204) Same
to be FOR CONSTRUCTING THE BRIDGE REPLACEMENTS (2 BRIDGE CULVERTS) ON
CR-#66 AT WARD CREEK NORTHEAST OF NEWVILLE AND ON CR-#90 AT CAT
BRANCH CREEK NORTH OF ABBEVILLE: 0.021 MILE in strict and entire conformity with
the provisions of the Contract, and the Notice to Contractors and the Proposal, and the Plans and
Specifications (including Special Provisions) prepared (or approved) by the State Transportation
Director (or an Assistant Engineer), the originals of which are on file in the Office of the State
Transportation Department, and which said Plans and Specifications and the Notice to
Contractors and the Proposal are hereby made a part of this Agreement as fully and to the same
effect as if the same had been set forth at length in the body of this Agreement.

2. The State agrees and promises to pay to the Contractor for said Work, when
completed in accordance with the Provisions of this Contract, the price as set forth in the said
Proposal, amounting approximately to TWO HUNDRED SEVENTY TWO THOUSAND FOUR
HUNDRED SIXTY & 10/100 dollars ($272,460.10), payments made as provided in said
Specifications upon presentation of the proper certificates of the State Transportation Director or
his representatives and upon the terms set forth in the said Specifications and pursuant to the
terms of this Contract.

3. The said work shall be done in accordance with the laws of the State of Alabama
under the direct supervision, and to the entire satisfaction of the State Transportation Director,
subject at all times to the inspection and approval of the Unites States Secretary of
Transportation, or his agents, and in accordance with the rules and regulations made pursuant to
the Federal Highway Act and Acts of the Federal Congress, amendatory and/or supplementary
thereto.

4. The decision of said State Transportation Director upon any question connected with
the execution of this Agreement or any failure or delay in the prosecution of the Work by the said
Contractor shall be final and conclusive.

PAGE TWO OF CONTRACT

    5.  The Contractor agrees to abide by the ALDOT's "**Principles of Business Conduct**".

IN WITNESS WHEREOF, THE STATE OF ALABAMA has caused these presents to be executed by JOE McINNES, TRANSPORTATION DIRECTOR and TRIPLE C. CONSTRUCTION the CONTRACTOR, has hereto sat his hand and seal this day and year above written.

STATE OF ALABAMA,

REVIEWED, As to Legal Form

_____ _Jin R. Ippolito, Jr._ _____    BY: _____
By/For:   JIM R. IPPOLITO, JR.   _By Cgrc_    D. J. McINNES, Director
Chief Counsel, Transportation Department    Transportation Department

CONTRACTOR,

(X) _Triple C Construction_
CONTRACTOR FIRM

(X) _23274_
AL. CONTRACTOR'S LICENSE NUMBER

Signed, sealed and delivered in the presence of

(X) _Lisa C. Culpepper_    BY (X) _Sherrill Cn_
WITNESS                      MEMBER OF FIRM

_Lisa C. Culpepper_    _Sherrill Calhoun_
PRINT NAME                      PRINT NAME

_owner_
TITLE

    The within and foregoing contract is hereby approved on this the _2_ day of _MARCH_ , 20 _04_ .

_Bob Riley_
BOB RILEY
GOVERNOR OF ALABAMA

# BOND FOR PERFORMANCE OF THE WORK

STATE OF ALABAMA
MONTGOMERY COUNTY

Bond # 50792



KNOW ALL MEN BY THESE PRESENTS: That we TRIPLE C. CONSTRUCTION OF BANKS, ALABAMA, as Principal and

American Southern Insurance Company, as Surety, are held and firmly bound unto the State of Alabama, in the penal sum of TWO HUNDRED SEVENTY TWO THOUSAND FOUR HUNDRED SIXTY & 10/100 Dollars, for the payment of which well and truly to be made, we hereby bind ourselves, our heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, we have hereunto set our hands and affixed our seals, this _____ day of _____, 20 _____.

PROVIDED, HOWEVER, that the condition of this obligation is such that where-as the above bound TRIPLE C. CONSTRUCTION have this day entered into a Contract with the said State of Alabama, for constructing the BRIDGE REPLACEMENTS (2 BRIDGE CULVERTS) of 0.021 MILE of road in HENRY COUNTY  to-wit: known as FEDERAL AID Project Nos. ACGBBRZ-3400(205) & ACGBBRZ-3400(204), located ON CR-#66 AT WARD CREEK NORTHEAST OF NEWVILLE AND ON CR-#90 AT CAT BRANCH CREEK NORTH OF ABBEVILLE, a copy of which said Contract is hereto attached.

NOW, THEREFORE, In the event the said TRIPLE C. CONSTRUCTION as such Contractor shall faithfully and promptly perform said contract and all the conditions and requirements thereof, then this obligation shall be null and void and of no effect, otherwise to remain and be in full force and effect.

PROVIDED, further, that upon the failure of the said TRIPLE C. CONSTRUCTION to promptly and efficiently prosecute said work, in any respect, in accordance with the contract, the above bound

American Southern Insurance Company

as surety, shall take charge of said work and complete the contract at their own expense, pursuant to its terms, receiving, however, any balance of the funds in the hands of said State due under said contract. Said Surety may, if they so elect, by written direction given to the Alabama Department of Transportation Director authorize the Alabama Department of Transportation Director to advertise for bids to complete the said contract at the expense of said Surety, and such Surety hereby agree and bind themselves to pay the expense of the completion of such work, less any funds in the hands of the State remaining due to above bound Contractor.

In the event said Principal shall fail or delay the prosecution and completion of said work and said Surety shall also fail to act promptly as herein before provided, then said Alabama Department of Transportation Director may cause ten days notice of such failure to be given, either to said Principal or Surety and at the expiration of said ten days,

## PAGE TWO OF BOND FOR PERFORMANCE OF THE WORK

if said Principal or Surety does not proceed promptly to execute said contract, the State of Alabama shall have the authority to cause said work to be done, and when the same is completed and the cost thereof estimated, the said principal and sureties shall and hereby agree to pay any excess in the cost of said work above the agreed price to be paid under said contract.

Upon the completion of said Contract pursuant to its terms, if any funds remain due on said Contract, the same shall be paid to said Principal or Surety.

The said Principal and Surety further agree as part of this obligation to pay all such damages of any kind to person or property that may result from a failure in any respect to perform and complete said Contract.

The decision of said Alabama Department of Transportation Director upon any question connected with the execution of said Contract, or any failure or delay in the prosecution of the Work by said Principal or Surety, shall be final and conclusive.

The Proposal, Specifications and the Contract, herein before referred to, and the Bond for the Payment of Labor, Materials, Feed-stuffs or Supplies executed under the provisions of Section 39-1-1, Code of Alabama 1975, as amended are made a part of this obligation, and this instrument is to be construed in connection therewith.

Witness our hands and seals, this _____ day of _____, 20 _____.

_Lisa C. Culpepper_ (L.S.)                _Signature_ (L.S.)
WITNESS                                   CONTRACTOR'S SIGNATURE

                                          _Owner_
                                          TITLE

                                          _Triple C Construction_
                                          LEGAL NAME OF CONTRACTOR

American Southern Insurance Co.           _4410 CR 6636 Banks, AL 36005_
NAME OF SURETY                            ADDRESS

BY: _signature_
    ATTORNEY-IN-FACT                      NOTICE TO INSURANCE PRODUCER
    Scott E. Stoltzner                    Please print or write legibly your name and
                                          complete address below including
                                          PRODUCER'S COMPANY
Countersigned by Alabama Licensed
Insurance Producer for Surety, if         _____
Applicable

_____
NAME AND LICENSE NUMBER                   _____

_____
ADDRESS                                   _____
                                          PRODUCER'S COMPANY

Bond # 50792

# BOND FOR PAYMENT
## OF LABOR, MATERIALS, FEED-STUFFS OR SUPPLIES

STATE OF ALABAMA
MONTGOMERY COUNTY

KNOW ALL MEN BY THESE PRESENTS: That we TRIPLE C. CONSTRUCTION OF BANKS, ALABAMA as Principal,

and, _American Southern Insurance Company_____ as Surety, are held and firmly bound unto the State of Alabama, in the penal sum of TWO HUNDRED SEVENTY TWO THOUSAND FOUR HUNDRED SIXTY & 10/100 Dollars ($272,460.10), for the payment of which sum, well and truly to be made, we hereby bind ourselves, our heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, we have hereunto set our hands and affixed our seals this_____ day of _____, 20_____.

PROVIDED, HOWEVER, that the condition of this obligation is such that whereas the above bound TRIPLE C. CONSTRUCTION have this day entered into a Contract with the said STATE OF ALABAMA, for constructing the BRIDGE REPLACEMENTS (2 BRIDGE CULVERTS) of 0.021 MILE of road in HENRY COUNTY, known as FEDERAL AID, Project Nos. ACGBBRZ-3400(205) & ACGBBRZ-3400(204), located ON CR-#66 AT WARD CREEK NORTHEAST OF NEWVILLE AND ON CR-#90 AT CAT BRANCH CREEK NORTH OF ABBEVILLE, a copy of which said Contract is hereto attached.

NOW, THEREFORE, in the event that said TRIPLE C. CONSTRUCTION as such Contractor shall promptly make payment to all persons supplying him or them with labor, material, feed-stuffs, or supplies for or in the prosecution of the Work provided for in said Contract, that this obligation shall be null and void and of no effect, otherwise to remain and be in full force and effect.

PROVIDED, further, in the event that the said TRIPLE C. CONSTRUCTION, as such Contractor shall fail to make prompt payment to all persons supplying him or them with labor, materials, feed-stuffs, or supplies for or in the prosecution of the work provided for in such Contract, the above bound _____

_____American Southern Insurance Company_____ as Surety shall be liable for the payment of such labor, materials, feed-stuffs or supplies and for the payment of reasonable attorney's fees incurred by successful claimants or plaintiffs in suits on said bond as provided in Section 39-1-1, Code of Alabama, 1975, as amended.

PAGE TWO OF PAYMENT OF LABOR, MATERIALS, FEED-STUFFS OR SUPPLIES

PROVIDED, FURTHER, that said Contractor and Surety hereby agree and bind themselves to the mode of service described in Section 39-1-1, Code of Alabama, as amended, and consent that such service shall be the same as personal service on said Contractor or Surety.

UPON the completion of said Contract pursuant to its terms, if any funds remain due on said Contract, the same shall be paid to said Principal or Surety.

The decision of said Alabama Department of Transportation Director upon any question connected with the execution of said Contract, or any failure or delay in the prosecution of the Work by said Principal or Surety, shall be final and conclusive.

The Proposal, Specifications and the Contract herein before referred to, and the Bond For Performance Of The Work executed under the provisions of Section 39-1-1, Code of Alabama, 1975, are made a part of this obligation, and this instrument is to be construed in connection therewith.

WITNESS our hands and seals, this _____ day of _____, 20_____

_Lisa C. Culpepper_ (L.S.)
WITNESS

_Sind Cr_ (L.S.)
CONTRACTOR' SIGNATURE

_Owner_
TITLE

_Triple C Construction_
NAME OF FIRM

_4410 CR 6636 Banks, AL. 36005_
ADDRESS

American Southern Insurance Co.
NAME OF SURETY

BY: _____
ATTORNEY-IN-FACT
Scott E. Stoltzner

NOTICE TO INSURANCE PRODUCER
Please print or write legibly your name and complete address below, including PRODUCER'S COMPANY

_____

_____

Countersigned by Alabama Licensed Insurance Producer for Surety, if Applicable

_____

_____
NAME AND LICENSE NUMBER

_____
ADDRESS

_____
PRODUCER'S COMPANY

# AMERICAN SOUTHERN INSURANCE COMPANY

**Home Office:** 200 S.W. 30th Street
Topeka, Kansas 66611

**Mailing Address:** 3715 Northside Pkwy, NW
Bldg 400, Ste 800
Atlanta, Georgia 30327

## GENERAL POWER OF ATTORNEY

Know all men by these Presents, that the American Southern Insurance Company had made, constituted and appointed, and by these presents does make, constitute and appoint Scott E. Stoltzner of Hoover, Alabama; Arthur S. Johnson of Atlanta, Georgia; Lenora N. Cape of Gainesville, Georgia; Mary F. Holland of Chamblee, Georgia; or Donald H. Gibbs of Atlanta, Georgia, EACH as its true and lawful attorney for it and its name, place and stead to execute on behalf of the said company, as surety, bonds, undertakings and contracts of suretyship to be given to all obligees provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount of the sum of $750,000 (seven hundred fifty thousand dollars).

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted pursuant to due authorization by the Executive Committee of the Board of Directors of the American Southern Insurance Company on the 26th day of May, 1998:

RESOLVED, that the Chairman, President or any Vice President of the Company be, and that each or any of them hereby is, authorized to execute Powers of Attorney qualifying the attorney named in the given Power of Attorney to execute in behalf of the American Southern Insurance Company bonds, undertakings and all contracts of suretyship; and that any Secretary or any Assistant Secretary be, and that each or any of them hereby is, authorized to attest the execution of any such Power of Attorney, and to attach thereto the seal of the Company.

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed and in the future, with respect to any bond undertaking or contract of suretyship to which it is attached.

In Witness Whereof, the American Southern Insurance Company has caused its official seal to be hereto affixed, and these presents to be signed by its President and attested by its Secretary this _29th_ day of _January_, 2004.

Attest:

Gail A. Lee, Secretary

By:

American Southern Insurance Company

Scott G. Thompson, President

STATE OF GEORGIA
COUNTY OF FULTON    SS:

On this _29th_ day of _January_, 2004, before me personally came Scott G. Thompson to me known, who being by me duly sworn, did depose and say that he resides in Atlanta, in the County of Fulton, State of Georgia, at 421 Hollydale Court; that he is the President of American Southern Insurance Company, the corporation described in and which executed the above instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed and that he signed his name thereto pursuant to due authorization.

STATE OF GEORGIA
COUNTY OF FULTON    SS:

Lori M. Pullen
Notary Public, State of Georgia
Qualified in Cobb County
Commission Expires September 7, 2006

I, the undersigned, a Vice President of American Southern Insurance Company, a Kansas Corporation, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and, furthermore, that the Resolution of the Executive Committee of the Board of Directors set forth in the Power of Attorney is now in force.

Signed and sealed at the City of Atlanta, Dated the _____ day of _____

John R. Huot
Vice President

Number    4118

01/12/2004  15:15    3343955    LICENSING BOAR    PAGE  01/01

# STATE LICENSING BOARD FOR GENERAL CONTRACTORS

2525 FAIRLANE DR. (EXECUTIVE PARK) MONTGOMERY, AL 36116
(WEBSITE: WWW.GENCONBD.STATE.AL.US)

## 2004 LICENSE RENEWAL EXTENSION

### THIS IS TO CERTIFY THAT

# TRIPLE C CONSTRUCTION

## BANKS, AL

## IS GRANTED AN EXTENSION OF THEIR 2003 LICENSE

## THIS EXTENSION WILL EXPIRE ON JULY 31, 2004

(ATTACH TO 2003 LICENSE CERTIFICATE)

JOSEPH C. ROGERS, JR.
EXECUTIVE SECRETARY

NOTE: THIS VERIFICATION IS PROVIDED TO ALLOW THE CONTRACTOR TO PULL
PERMITS, BID AND/OR NEGOTIATE PROJECTS WHILE AWAITING IMPLEMENTATION
OF THE NEW STAGGERED LICENSE RENEWAL DATES.

STATE OF ALABAMA

LICENSE NO.: 23274

TYPE: RENEWAL



## State Licensing Board for General Contractors

### THIS IS TO CERTIFY THAT

BID LIMIT: U

AMOUNT: UNLIMITED

TRIPLE C CONSTRUCTION

BANKS, AL 36005

is hereby licensed a General Contractor in the State of Alabama and is authorized to perform the following type(s) of work:

HS: HIGHWAYS & STREETS AND WORK INCIDENTAL THERETO

until December 31, 2003 when this Certificate expires.

028228

Witness our hands and seal of the Board, dated Montgomery, Ala.,

1 st day of JANUARY

_____ SECRETARY-TREASURER

_____ CHAIRMAN

(PERIAN BUSINESS PROFILE
33162;TRIPLE C CONSTRUCTION;BANKS AL 36005

| AGE | RPT DATE | TIME | PORT | TYPE | |
|---|---|---|---|---|---|
| 1 | 11/06/2003 | 08:07:24 | C24C | PROFILE | 340 |

-----------------------------------------------------------------------

RIPLE CONSTRUCTION & ENGR.                    FILE NO:  K08465026
R 1 BOX 63                                    FILE ESTABLISHED:  JAN. 1996
ANKS AL 36005                                 PHONE: 334-243-5174
-----------------------------------------------------------------------

                          COMPANY DESCRIPTION
                          -------------------

HE PRIMARY BUSINESS FOR TRIPLE CONSTRUCTION & ENGR. IS ENGINEERING & MNGMNT
ERVICE (SIC 8700).

                       PUBLIC RECORD INFORMATION
                       -------------------------

                            UCC PROFILE

ICC-TERM     03-19-01 ALABAMA SECRETARY OF
)RIG FILING: 12-05-00 0047080
;ECURED PTY: COWIN EQUIPMENT COMPANY, INC. AL BIRMINGHAM 35202 P.O. BOX 1
:OLLATERAL:  EQUIP

JCC-TERM     06-02-00 ALABAMA SECRETARY OF
)RIG FILING: 12-15-99 9950836
;ECURED PTY: COWIN EQUIPMENT COMPANY, INC. AL BIRMINGHAM 35202 P.O. BOX 1
:OLLATERAL:  EQUIP

THE INFORMATION HEREIN IS FURNISHED IN CONFIDENCE FOR YOUR EXCLUSIVE USE
FOR LEGITIMATE BUSINESS PURPOSES AND SHALL NOT BE REPRODUCED.  NEITHER
EXPERIAN INFORMATION SOLUTIONS, INC., NOR ITS SOURCES OR DISTRIBUTORS WARRANT
SUCH INFORMATION NOR SHALL THEY BE LIABLE FOR YOUR USE OR RELIANCE UPON IT.
   COPYRIGHT 2003 EXPERIAN INFORMATION SOLUTIONS, INC. ALL RIGHTS RESERVED.
**END PROFILE**

ser ID : SARAH                                              Date : 11/06/2003

eport Name : Bureau Data (Record ID # 10641)               Page : 0001
--------------------------------------------------------------------------------
xperian Department : UNDERWRITING
ecord Number : 10641
eport Type : Credit - CALHOUN,SHERRILL - 420580306
racking:
3D3 CPS .........
ALHOUN,SHERRILL   420580306;
A-4410 COUNTRY  ROAD 6636/BANKS AL 36005;
-49;
-06/068/3.19;PSUM;H-Y;




AGE 1    DATE 11-06-2003    TIME   7:51:25  V601   TAL1

SHERRILL W CALHOUN                    SS: 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
4410 COUNTY ROAD 6636                 YOB: 1946
BANKS AL 360053315
RPTD: 5-03 U 1X
LAST SUB: 1902885

RR 1 BOX 63
BANKS AL 360059121
RPTD: 12-87 TO 2-01 U 1X

3089 TENNILLE RD
BRUNDIDGE AL 360102077
RPTD: 8-97 I

----------------------------- PROFILE SUMMARY ------------------------------
                                                    CNT 01/00/00/00
PUBLIC RECORDS-------0  PAST DUE AMT--------$0  INQUIRIES---0  SATIS ACCTS---4
INSTALL BAL--------N/A  SCH/EST PAY--------$20  INQS/6 MO---0  NOW DEL/DRG---0
R ESTATE BAL-------$0   R ESTATE PAY-------$0   TRADELINE---5  WAS DEL/DRG---1
TOT REV BAL-------$122  TOT REV AVAIL------94%  PAID ACCT---2  OLD TRADE--1-73

----------------------------- SCORE SUMMARY --------------------------------
NATIONAL RISK SCORE                   =     12

SCORE FACTORS:
L   CREDIT OBLIGATIONS WITH AN OUTSTANDING BALANCE
A   DELINQUENT CREDIT OBLIGATIONS
B   DEROGATORY CREDIT OBLIGATIONS
O   ACCOUNTS BROUGHT CURRENT WHICH WERE PREVIOUSLY DELINQUENT

----------------------------------- TRADES ---------------------------------
SUBSCRIBER                OPEN     AMT-TYP1     AMT-TYP2 ACCTCOND    PYMT STATUS
SUB#   KOB TYP TRM ECOA BALDATE    BALANCE  PYMT LEVEL MOS REV  PYMT HISTORY

ser ID : SARAH                                    Date : 11/06/2003

eport Name : Bureau Data (Record ID # 10641)           Page : 0002
--------------------------------------------------------------------
ACCOUNT #              LAST PD    MONTH PAY    PAST DUE   MAXIMUM     BY MONTH

COLONIAL MORTGAGE CO      1-73    $17,400-O               TRANSFER   CURR ACCT
1900740 VF R/F 30Y   1 11-30-00                11-00       (99)     BCCCCCCCCCCCC
31306                                                                CCCC------CC
** TRANSFERRED TO ANOTHER LENDER **

CHASE MANHATTAN MTGE      1-85    $17,400-O                 PAID    CURR ACCT
2991739 FM R/F 30Y   2 10-15-02                10-02       (21)     BCCCCCCCCCCC-
907918486                                                           CCCCCCCC

DILLARDS DEPT STORE      11-88    $1,353-H                  OPEN    CUR WAS 30
3378879 DC CHG REV   4  9-30-03     $0          6-97       (99)     NNNN-N0000000
757500013730425900       6-00                            4-97/1    000000000000

BLAIR CORPORATION        10-99     $500-L    $1,000-H       OPEN    CURR ACCT
1902885 WZ CHG REV   1 11-03-03     $122       11-03       (45)     CCCCCCCCCCCCC
775375175                 9-03      $20                             CCCC0CC-CC--

CREDIT FIRST N A         12-88     $326-L                 INACTIVE  CURR ACCT
2301780 AT CHG REV   1  5-08-96     $0         10-91       (90)     NNNNNNNNNNNNN
810561602                                                           NNNNNNNN-NNN

END -- EXPERIAN
]

```
ser ID : SARAH                                      Date : 11/06/2003

eport Name : Bureau Data (Record ID # 10642)              Page : 0001
----------------------------------------------------------------------
xperian Department : UNDERWRITING
ecord Number : 10642
eport Type : Credit - CALHOUN,RUBY - 424669448
racking:
3D3 CPS .........
ALHOUN,RUBY   424669448;
A-4410 COUNTY ROAD 6636/BANKS AL 36005;
-49;
-06/068/3.19;PSUM;H-Y;
```

```
AGE 1    DATE 11-06-2003   TIME  7:51:30 V101   TAL1

RUBY J CALHOUN                    SS: 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
RR 1 BOX 63
BANKS AL 360059121
RPTD: 1-01 TO 10-02 U 2X
LAST SUB: 2991739
```

```
------------------------- PROFILE SUMMARY -------------------------------
                                                    CNT 00/00/00/00
PUBLIC RECORDS-------0   PAST DUE AMT--------$0   INQUIRIES---0  SATIS ACCTS---3
INSTALL BAL---------$0   SCH/EST PAY---------$0   INQS/6 MO---0  NOW DEL/DRG---0
R ESTATE BAL--------$0   R ESTATE PAY--------$0   TRADELINE---3  WAS DEL/DRG---0
TOT REV BAL--------N/A   TOT REV AVAIL------N/A   PAID ACCT---3  OLD TRADE--1-73
```

```
-------------------------- SCORE SUMMARY --------------------------------
NATIONAL RISK SCORE NOT AVAILABLE DUE TO MODEL EXCLUSION CRITERIA.
```

| SUBSCRIBER | | OPEN | AMT-TYP1 | AMT-TYP2 | ACCTCOND | PYMT STATUS |
|---|---|---|---|---|---|---|
| SUB#  KOB TYP TRM ECOA | | BALDATE | BALANCE | PYMT LEVEL | MOS REV | PYMT HISTORY |
| ACCOUNT # | | LAST PD | MONTH PAY | PAST DUE | MAXIMUM | BY MONTH |
| COLONIAL MORTGAGE CO | 1-73 | $17,400-O | | | TRANSFER | CURR ACCT |
| 1900740 VF R/F 30Y | 1 11-30-00 | | 11-00 | (99) | BCCCCCCCCCCCC |
| 31306 | | | | | CCCC------CC |
| ** TRANSFERRED TO ANOTHER LENDER ** | | | | | | |
| CHASE MANHATTAN MTGE | 1-85 | $17,400-O | | | PAID | CURR ACCT |
| 2991739 FM R/F 30Y | 2 10-15-02 | | 10-02 | (21) | BCCCCCCCCCCC- |
| 907918486 | | | | | CCCCCCCC |
| FRIEDMANS JEWELERS | 11-01 | $116-O | | | | PAID |
| 1318660 JA ISC  3 | 1 12-06-01 | | 12-01 | ( 1) | B |
| 5816110088428 | | | | | | |

The TRADES section header: `---- TRADES ----` appears above the table.

ser ID : SARAH

Date : 11/06/2003

eport Name : Bureau Data (Record ID # 10642)

Page : 0002

--------------------------------------------------------------------------

END -- EXPERIAN

# BOND FOR PAYMENT

## OF LABOR, MATERIALS, FEED-STUFFS OR SUPPLIES

STATE OF ALABAMA
MONTGOMERY COUNTY

      KNOW ALL MEN BY THESE PRESENTS: That we TRIPLE C. CONSTRUCTION OF BANKS, ALABAMA as Principal,

and, _American Southern Ins. Company_ as Surety, are held and firmly bound unto the State of Alabama, in the penal sum of TWO HUNDRED SEVENTY TWO THOUSAND FOUR HUNDRED SIXTY & 10/100 Dollars ($272,460.10), for the payment of which sum, well and truly to be made, we hereby bind ourselves, our heirs, executors, administrators, successors and assigns.

      IN WITNESS WHEREOF, we have hereunto set our hands and affixed our seals this _18th_ day of _February_, 20 _04_.

      PROVIDED, HOWEVER, that the condition of this obligation is such that whereas the above bound TRIPLE C. CONSTRUCTION have this day entered into a Contract with the said STATE OF ALABAMA, for constructing the BRIDGE REPLACEMENTS (2 BRIDGE CULVERTS) of 0.021 MILE of road in HENRY COUNTY, known as FEDERAL AID, Project Nos. ACGBBRZ-3400(205) & ACGBBRZ-3400(204), located ON CR-#66 AT WARD CREEK NORTHEAST OF NEWVILLE AND ON CR-#90 AT CAT BRANCH CREEK NORTH OF ABBEVILLE, a copy of which said Contract is hereto attached.

      NOW, THEREFORE, in the event that said TRIPLE C. CONSTRUCTION as such Contractor shall promptly make payment to all persons supplying him or them with labor, material, feed-stuffs, or supplies for or in the prosecution of the Work provided for in said Contract, that this obligation shall be null and void and of no effect, otherwise to remain and be in full force and effect.

      PROVIDED, further, in the event that the said TRIPLE C. CONSTRUCTION, as such Contractor shall fail to make prompt payment to all persons supplying him or them with labor, materials, feed-stuffs, or supplies for or in the prosecution of the work

provided for in such Contract, the above bound _____

_American Southern Ins. Company_ as Surety shall be liable for the payment of such labor, materials, feed-stuffs or supplies and for the payment of reasonable attorney's fees incurred by successful claimants or plaintiffs in suits on said bond as provided in Section 39-1-1, Code of Alabama, 1975, as amended.



PAGE TWO OF PAYMENT OF LABOR, MATERIALS, FEED-STUFFS OR SUPPLIES

     PROVIDED, FURTHER, that said Contractor and Surety hereby agree and bind themselves to the mode of service described in Section 39-1-1, Code of Alabama, as amended, and consent that such service shall be the same as personal service on said Contractor or Surety.

     UPON the completion of said Contract pursuant to its terms, if any funds remain due on said Contract, the same shall be paid to said Principal or Surety.

     The decision of said Alabama Department of Transportation Director upon any question connected with the execution of said Contract, or any failure or delay in the prosecution of the Work by said Principal or Surety, shall be final and conclusive.

     The Proposal, Specifications and the Contract herein before referred to, and the Bond For Performance Of The Work executed under the provisions of Section 39-1-1, Code of Alabama, 1975, are made a part of this obligation, and this instrument is to be construed in connection therewith.

WITNESS our hands and seals, this _18th_ day of _February_ 20 _04_

_Lisa C. Culpepper_ (L.S.)
WITNESS

_[signature]_ (L.S.)
CONTRACTOR' SIGNATURE

_Owner_
TITLE

_Triple C Construction_
NAME OF FIRM

_4410 CR 6636 Banks, AL. 36005_
ADDRESS

American Southern Insurance Co.
NAME OF SURETY

BY: _[signature]_
ATTORNEY-IN-FACT
Scott E. Stoltzner

NOTICE TO INSURANCE PRODUCER
Please print or write legibly your name and complete address below, including PRODUCER'S COMPANY

_Palomar Ins Corp_

_PO Box 11128_

_Monty AL 36111_

_Tracey Davis_
PRODUCER'S COMPANY

Countersigned by Alabama Licensed Insurance Producer for Surety, if Applicable

_Scott Stoltzner  A208551_
NAME AND LICENSE NUMBER

_3005 Crossings Dr_
ADDRESS
_B'ham AL 35242_

**BOND  OR PERFORMANCE OF THE  WORK**

STATE OF ALABAMA
MONTGOMERY COUNTY

      KNOW ALL MEN BY THESE PRESENTS: That we TRIPLE C.
CONSTRUCTION OF BANKS, ALABAMA, as Principal and

American Southern Ins. Co. _____, as Surety, are held and
firmly bound unto the State of Alabama, in the penal sum of TWO HUNDRED
SEVENTY TWO THOUSAND FOUR HUNDRED SIXTY & 10/100 Dollars, for the
payment of which well and truly to be made, we hereby bind ourselves, our heirs,
executors, administrators, successors and assigns.

      IN WITNESS WHEREOF, we have hereunto set our hands and affixed our seals,
this ___18th___ day of ___February_____, 20 _04_ .

      PROVIDED, HOWEVER, that the condition of this obligation is such that where-
as the above bound TRIPLE C. CONSTRUCTION have this day entered into a Contract
with the said State of Alabama, for constructing the BRIDGE REPLACEMENTS (2
BRIDGE CULVERTS) of 0.021 MILE of road in HENRY COUNTY  to-wit: known as
FEDERAL AID Project Nos. ACGBBRZ-3400(205) & ACGBBRZ-3400(204), located
ON CR-#66 AT WARD CREEK NORTHEAST OF NEWVILLE AND ON CR-#90 AT
CAT BRANCH CREEK NORTH OF ABBEVILLE, a copy of which said Contract is
hereto attached.

      NOW, THEREFORE, In the event the said TRIPLE C. CONSTRUCTION as
such Contractor shall faithfully and promptly perform said contract and all the conditions
and requirements thereof, then this obligation shall be null and void and of no effect,
otherwise to remain and be in full force and effect.

      PROVIDED, further, that upon the failure of the said TRIPLE C.
CONSTRUCTION to promptly and efficiently prosecute said work, in any respect, in
accordance with the contract, the above bound

American Southern Ins. Co. _____

as surety, shall take charge of said work and complete the contract at their own expense,
pursuant to its terms, receiving, however, any balance of the funds in the hands of said
State due under said contract.  Said Surety may, if they so elect, by written direction
given to the Alabama Department of Transportation Director authorize the Alabama
Department of Transportation Director to advertise for bids to complete the said contract
at the expense of said Surety, and such Surety hereby agree and bind themselves to pay
the expense of the completion of such work, less any funds in the hands of the State
remaining due to above bound Contractor.

      In the event said Principal shall fail or delay the prosecution and completion of
said work and said Surety shall also fail to act promptly as herein before provided, then
said Alabama Department of Transportation Director may cause ten days notice of such
failure to be given, either to said Principal or Surety and at the expiration of said ten days

**EXHIBIT**
**D**

PAGE TWO OF BOND FOR PERFORMANCE OF THE WORK

if said Principal or Surety does not proceed promptly to execute said contract, the State of Alabama shall have the authority to cause said work to be done, and when the same is completed and the cost thereof estimated, the said principal and sureties shall and hereby agree to pay any excess in the cost of said work above the agreed price to be paid under said contract.

Upon the completion of said Contract pursuant to its terms, if any funds remain due on said Contract, the same shall be paid to said Principal or Surety.

The said Principal and Surety further agree as part of this obligation to pay all such damages of any kind to person or property that may result from a failure in any respect to perform and complete said Contract.

The decision of said Alabama Department of Transportation Director upon any question connected with the execution of said Contract, or any failure or delay in the prosecution of the Work by said Principal or Surety, shall be final and conclusive.

The Proposal, Specifications and the Contract, herein before referred to, and the Bond for the Payment of Labor, Materials, Feed-stuffs or Supplies executed under the provisions of Section 39-1-1, Code of Alabama 1975, as amended are made a part of this obligation, and this instrument is to be construed in connection therewith.

Witness our hands and seals, this _18th_ day of _February_, 20 _04_.

_Lisa C. Culpepper_ (L.S.)
WITNESS

_[signature]_ (L.S.)
CONTRACTOR'S SIGNATURE

_Owner_
TITLE

_Triple C Construction_
LEGAL NAME OF CONTRACTOR

American Southern Insurance Co.
NAME OF SURETY

_4410 CR 6636 Banks, AL 36005_
ADDRESS

BY: _[signature]_
ATTORNEY-IN-FACT
Scott E. Stoltzner

NOTICE TO INSURANCE PRODUCER
Please print or write legibly your name and complete address below including PRODUCER'S COMPANY

Countersigned by Alabama Licensed Insurance Producer for Surety, if Applicable

_Palomar Ins. Corporation_

_Scott E. Stoltzner A208551_
NAME AND LICENSE NUMBER

_PO Box 11128_

_3075 Crossings Dr._
ADDRESS
_B'ham AL 35242_

_Montg AL 36111_
PRODUCER'S COMPANY

## AMERICAN SOUTHERN INSURANCE COMPANY

| | |
|---|---|
| **Home Office:** 200 S.W. 30th Street<br>Topeka, Kansas 66611 | **Mailing Address:** 3715 Northside Pkwy, NW<br>Bldg 400, Ste 800<br>Atlanta, Georgia 30327 |

## GENERAL POWER OF ATTORNEY

Know all men by these Presents, that the American Southern Insurance Company had made, constituted and appointed, and by these presents does make, constitute and appoint Scott E. Stoltzner of Hoover, Alabama; Arthur S. Johnson of Atlanta, Georgia; Lenora N. Cape of Gainesville, Georgia; Mary F. Holland of Chamblee, Georgia; or Donald H. Gibbs of Atlanta, Georgia, EACH as its true and lawful attorney for it and its name, place and stead to execute on behalf of the said company, as surety, bonds, undertakings and contracts of suretyship to be given to all obligees provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount of the sum of $750,000 (seven hundred fifty thousand dollars).

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted pursuant to due authorization by the Executive Committee of the Board of Directors of the American Southern Insurance Company on the 26th day of May, 1998:

RESOLVED, that the Chairman, President or any Vice President of the Company be, and that each or any of them hereby is, authorized to execute Powers of Attorney qualifying the attorney named in the given Power of Attorney to execute in behalf of the American Southern Insurance Company bonds, undertakings and all contracts of suretyship; and that any Secretary or any Assistant Secretary be, and that each or any of them hereby is, authorized to attest the execution of any such Power of Attorney, and to attach thereto the seal of the Company.

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed and in the future, with respect to any bond undertaking or contract of suretyship to which it is attached.

In Witness Whereof, the American Southern Insurance Company has caused its official seal to be hereto affixed, and these presents to be signed by its President and attested by its Secretary this __29th__ day of __January__, 2004.

Attest:                                      American Southern Insurance Company

_Gail A. Lee_                     By:     _Scott G. Thompson_
Gail A. Lee, Secretary                          Scott G. Thompson, President

STATE OF GEORGIA
                                SS:
COUNTY OF FULTON

On this __29th__ day of __January__, 2004, before me personally came Scott G. Thompson to me known, who being by me duly sworn, did depose and say that he resides in Atlanta, in the County of Fulton, State of Georgia, at 421 Hollydale Court; that he is the President of American Southern Insurance Company, the corporation described in and which executed the above instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed and that he signed his name thereto pursuant to due authorization.

_Lori M. Pullen_
Lori M. Pullen
Notary Public, State of Georgia
Qualified in Cobb County
Commission Expires September 7, 2006

STATE OF GEORGIA
                                SS:
COUNTY OF FULTON

I, the undersigned, a Vice President of American Southern Insurance Company, a Kansas Corporation, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and, furthermore, that the Resolution of the Executive Committee of the Board of Directors set forth in the Power of Attorney is now in force.

Signed and sealed at the City of Atlanta, Dated the _18th_ day of _February_ 2004

_John R. Huot_
John R. Huot
Vice President

Number     4118

# AMERICA SOUTHERN INSURANCE COMPANY

**Home Office:** 200 S.W. 30th Street
Topeka, Kansas 66611

**Mailing Address:** 3715 Northside Pkwy, NW
Bldg 400, Ste 800
Atlanta, Georgia 30327

## GENERAL POWER OF ATTORNEY

Know all men by these Presents, that the American Southern Insurance Company had made, constituted and appointed, and by these presents does make, constitute and appoint Scott E. Stoltzner of Hoover, Alabama; Arthur S. Johnson of Atlanta, Georgia; Lenora N. Cape of Gainesville, Georgia; Mary F. Holland of Chamblee, Georgia; or Donald H. Gibbs of Atlanta, Georgia, EACH as its true and lawful attorney for it and its name, place and stead to execute on behalf of the said company, as surety, bonds, undertakings and contracts of suretyship to be given to all obligees provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount of the sum of $750,000 (seven hundred fifty thousand dollars).

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted pursuant to due authorization by the Executive Committee of the Board of Directors of the American Southern Insurance Company on the 26th day of May, 1998:

RESOLVED, that the Chairman, President or any Vice President of the Company be, and that each or any of them hereby is, authorized to execute Powers of Attorney qualifying the attorney named in the given Power of Attorney to execute in behalf of the American Southern Insurance Company bonds, undertakings and all contracts of suretyship; and that any Secretary or any Assistant Secretary be, and that each or any of them hereby is, authorized to attest the execution of any such Power of Attorney, and to attach thereto the seal of the Company.

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed and in the future, with respect to any bond undertaking or contract of suretyship to which it is attached.

In Witness Whereof, the American Southern Insurance Company has caused its official seal to be hereto affixed, and these presents to be signed by its President and attested by its Secretary this ___29th___ day of ___January___, 2004.

Attest:

_Gail A. Lee_
Gail A. Lee, Secretary

By: _Scott G. Thompson_

American Southern Insurance Company

Scott G. Thompson, President

STATE OF GEORGIA

        SS:

COUNTY OF FULTON

On this ___29th___ day of ___January___, 2004, before me personally came Scott G. Thompson to me known, who being by me duly sworn, did depose and say that he resides in Atlanta, in the County of Fulton, State of Georgia, at 421 Hollydale Court; that he is the President of American Southern Insurance Company, the corporation described in and which executed the above instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed and that he signed his name thereto pursuant to due authorization.

_Lori M. Pullen_
Lori M. Pullen

STATE OF GEORGIA

        SS:

COUNTY OF FULTON

Notary Public, State of Georgia
Qualified in Cobb County
Commission Expires September 7, 2006

I, the undersigned, a Vice President of American Southern Insurance Company, a Kansas Corporation, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and, furthermore, that the Resolution of the Executive Committee of the Board of Directors set forth in the Power of Attorney is now in force.

Signed and sealed at the City of Atlanta, Dated the ___18th___ day of ___February___ 2004

_John R. Huot_
John R. Huot
Vice President

Number

    4118



# ALABAMA
# DEPARTMENT OF TRANSPORTATION

### 1409 COLISEUM BOULEVARD
### MONTGOMERY, ALABAMA 36130-3050

**BOB RILEY**
GOVERNOR

**JOE McINNES**
TRANSPORTATION DIRECTOR

March 16, 2005

Mr. Scott E. Stoltzner
Resident Agent for American Southern Ins. Co.
3075 Crossings Drive
Birmingham, AL 35242

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Re:  Project Number ACGBBRZ-3400 (204) & (205)
     Henry County

Dear Sir:

In a letter from Mr. Chris Champion, Henry County Engineer, dated February 24, 2005 to Triple C
Construction the contractor was advised to provide a plan for the removal of the substandard culvert slab at
Ward Creek on the above referenced projects.

The contractor was advised to provide this plan within 10 days of receiving the letter. On March 1, 2005
the contractor's attorney responded to this letter by requesting copies of all test results conducted by the
Department. This information has since been provided to this attorney.

As of this date, a plan for the removal of this unacceptable work has not been received. Therefore, Triple
C Construction is in default of the contract and the Department is placing the contract in your hands for
completion.

We request a meeting with you to discuss the execution of a takeover agreement for the completion of the
project. You may contact Mr. Robert Holmberg of my office at (334) 242-6210 to schedule a time.

Yours truly,

Terry McDuffie
Construction Engineer

(334) 242-6210    #MCDUffiET@DOT.STATE.AL.US.

S0792    1/25-001-002

TM/rh
pc: Mr. Joe McInnes          Mr. Clay McBrien
    Mr. Dan Morris           Mr. Lamar McDavid
    Mr. Don Vaughn           Mr. Frank Courson
    Mr. Ray Bass             Mr. J. M. Griffin
    Mr. G. M. Harper         Mr. Chris Champion
    Mr. Jim Ippolito         File



EXHIBIT
E